560 A.2d 777

**Samuel PHILLIP and Lydia Phillip, Appellants,**

v.

**Richard M. CLARK.**

Superior Court of Pennsylvania.

Argued Jan. 24, 1989.

Filed May 4, 1989.

Reargument Denied July 17, 1989.

Allen L. Feingold, Philadelphia, for appellants.

Joseph Ross, Philadelphia, for appellee.

Before BROSKY, McEWEN, and OLSZEWSKI, JJ.

BROSKY, Judge:

This is an appeal from a judgment entered against appellant in a motor vehicle tort case. The trial court found that appellant's recovery in an arbitration proceeding constituted a litigation of damages and that appellants were estopped from further litigating these damages.

Appellants argue that the trial court erred in granting summary judgment as the uninsured motorist recovery did not preclude an action against the tortfeasor. We affirm.

This suit arose out of an automobile accident which occurred on December 26, 1975. Appellants claim personal injuries resulting from a collision with appellee. At the time of the collision, appellee was insured by Concord Mutual Insurance Company ("Concord"), and his automobile was therefore a "secured vehicle" as defined by Section 104 of the Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.*, *repealed by* Act of February 12, 1984 (No. 1984–11) § 8. The Concord policy provided liability limits of $15,000 per person, $30,000 per accident.

On May 13, 1978, a Court of Common Pleas panel of arbitrators awarded appellant, Samuel Phillip, $7,000.00 and appellant, Lydia Phillip, $500.00. On May 18, 1978, the appellee appealed the award for a jury trial *de novo* before the Court of Common Pleas.

In July, 1980, prior to the trial, Concord was declared insolvent and ultimately dissolved. Consequently, the Pennsylvania Insurance Guaranty Association ("PIGA") became Mr. Clark's statutory insurer under Section 201(b)(1)(ii) of the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 *et seq.* ("the Act"). The appellants, as required by Section 503(a) of the Act, submitted an uninsured motorist claim to their own automobile insurance carrier, Nationwide Insurance Company ("Nationwide"). The matter was submitted to binding arbitration under the terms of the Nationwide policy. On July 19, 1982, the arbitration panel awarded the appellants the sum of $26,788.00 in compensation for their injuries.

Nevertheless, the appellants continued to seek additional recovery from P.I.G.A., which denied their claim because the uninsured motorist benefits available to the appellants from their Nationwide policy had not been exhausted, and the award collaterally estopped the appellants from seeking additional damages.

On May 22, 1984, appellee filed a Motion for Discontinuance with the Court of Common Pleas. The Motion was based upon both the appellants' recovery of less than the limits of the uninsured motorist benefits from Nationwide, as well as a lack of activity in the case since May 18, 1978. Appellee's Motion was denied by the trial court on June 25, 1984, without any opinion.

Appellee filed a Motion for Summary Judgment on September 9, 1987, asserting that the arbitration award collaterally estopped the appellants from relitigating the issue of their damages, and that they are therefore precluded from additional recovery from the appellee. Summary judgment in appellee's favor was granted on October 28, 1987. Appellants filed a Notice of Appeal to this Court on November 5, 1987.

■ Appellants first contend that the trial court was precluded from granting summary judgment because of the denial, by another judge, of the motion for discontinuance. However, this challenge fails as the granting of the motion for summary judgment cannot be construed as a reversal of a decision of another judge of the same court in the same case. *McNally v. Dagney*, 353 Pa.Super. 402, 510 A.2d 722 (1986). The motion for discontinuance raised issues of inactivity and failure to exhaust uninsured motorist benefits. In contrast, the motion for summary judgment raised an issue of collateral estoppel. Furthermore, the issue is waived by appellants' failure to state it in the statement of questions involved. Pa.R.A.P. 2116.

■ Appellants further argue that the award of the arbitrators does not preclude a separate suit against the appellee. They argue that the amount awarded by the arbitrators is inadequate to fully compensate them. Appellants rely heavily upon our Supreme Court's decision in *Bethea v. Forbes*, 519 Pa. 422, 548 A.2d 1215 (1988). In *Bethea*, under facts *similar*, but not identical, to the present case, our Supreme Court found that an individual who had *settled* an uninsured motorist claim, which arose due to the insolvency of the defendant's insurer, could still proceed against the defendant individually. Thus, appellees argue they

should similarly be allowed to proceed against appellee individually. The key difference between *Bethea* and the present case is the fact that in the present case the issue of appellants' damages was litigated in front of an arbitration panel and decided, thus bringing up a question of collateral estoppel. In *McNally v. Dagney*, 353 Pa.Super. 402, 510 A.2d 722 (1986), we indicated that an arbitration award of uninsured motorist benefits could act to collaterally estop a re-litigation of these damages where they were the same as those awarded. Since collateral estoppel or issue preclusion appears to require a previous *litigation* of a fact it would seem this issue was not a factor in *Bethea*, as there was a settlement of the uninsured motorist claim in that case.

In analyzing appellee's collateral estoppel argument it must be remembered that although appellants had recovered from their own carrier, due to the uninsured motorist context, appellants could be said to have been in a constructive adversarial relationship with that carrier. The essence of uninsured motorist coverage is that the insured's carrier will provide the liability coverage of the negligent tortfeasor where the tortfeasor does not do so himself. Thus, the insured's carrier, in a constructive sense, takes the place of the alleged tortfeasor's carrier and the insured, to recover, must establish the liability of the tortfeasor in the same manner as if proceeding directly against the alleged tortfeasor himself. One would presume, as well, that the interests of the insured and insurer also take on an adversarial relationship as well. The insured would naturally try to recover as much as possible while the insurer, in order to minimize its own liability, would advocate against an excessive assessment of damages. Thus, there is compelling reason to consider the arbitration award a fair and final litigation of appellant's damages, and the similarity in position of the alleged tortfeasor and the uninsured motorist carrier would seem to also militate toward allowing collateral estoppel effect to the arbitrator's award. This analysis would pertain to an ordinary uninsured motorist case and seems, at least implicitly, recognized in *McNally v. Dagney*. However, the reasons for allowing collateral estoppel effect

are perhaps even more compelling in the insolvent insurer context presented here.

In the event one's insurer becomes insolvent, the Pennsylvania Insurance Guaranty Association (PIGA) becomes obligated to provide the coverage previously provided by the insolvent carrier. However, before one can seek recovery from PIGA one must exhaust all rights under his own policy. This has been construed to mean that before one can make a liability claim against PIGA one must seek recovery under one's own uninsured motorist coverage. *Bethea*, supra. Thus, by statute, one's own uninsured motorist coverage, when it is present, constructively takes the place of PIGA, which is constructively taking the place of the insolvent insurer. That insolvent insurer had an obligation to defendant the insured, who had paid premiums and was thus entitled to both coverage and representation.

If the arbitration proceeding is given no collateral estoppel effect the insured of the insolvent insurer is denied the benefit of finality which would normally attach to such an adjudication of liability and damages, and the plaintiff could then proceed freely against the insured individually and make basically any claim of damages without regard to the previous litigation of those matters. It would seem patently unfair to put an insured at a disadvantage simply because his insurer happens to go insolvent.

In *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137, 139 (1985), our Supreme Court stated:

"Res judicata" encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. *State Hospital for Criminal Insane v. Consolidated Water Supply Co.*, 267 Pa. 29, 110 A. 281 (1920). The purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litiga-

tion.... Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined.

In *Mellon Bank v. Rafsky*, 369 Pa.Super. 585, 535 A.2d 1090, 1093 (1987), we stated:

> There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action. Collateral estoppel applies if five elements are present: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; (4) the party against whom the doctrine is asserted or his privy has had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior case was essential to the judgment therein.

(Citations omitted). A studied review of the above quoted section in relation to the facts presented here leads us to a conclusion that collateral estoppel is appropriate here. Appellants are, in essence, attempting to once again litigate the exact same matter as litigated in the arbitration proceedings. The award there was based upon injuries received in the collision with appellee. Appellants, in the present controversy, are simply asserting that the damages awarded were insufficient to fully compensate them. However, the award of the arbitrators speaks contrarily. Appellants were not even awarded the full extent of the uninsured motorist coverage available. Thus, under these facts, we must conclude that appellants are collaterally estopped from receiving damages from appellee and that summary judgment was properly granted.

Judgment affirmed.

McEWEN, J., concurs in the result.