559 A.2d 896

**CITY OF PITTSBURGH, Appellee,**

**v.**

**ZONING BOARD OF ADJUSTMENT OF CITY OF PITTSBURGH, Dom Zullo and Irene Dale.**

**Appeal of Dom ZULLO and Irene Dale.**

Supreme Court of Pennsylvania.

Argued March 6, 1989.

Decided June 5, 1989.

46

William R. Grove, Hollinshead & Mendelson, Leonard M. Mendelson, Pittsburgh, for appellants.

D.R. Pellegrini, City Solicitor, Kellen McClendon, Asst. City Solicitor, Dept. of Law, Pittsburgh, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

This is the appeal of Dom Zullo and Irene Dale, owners of a building in Pittsburgh, from an order of the Commonwealth Court which reversed an order of the Court of Common Pleas of Allegheny County. The latter order dismissed the City of Pittsburgh's (hereinafter City) appeal and affirmed the grant of a variance which would have allowed the appellants to use their building as a fifteen-unit apartment house. The facts of the case and the events which led it here are set forth below.

In 1979, appellants acquired the property at issue, 5838 Alderson Street.[1] The building is located in an R–4 zoning district in which multiple-family dwellings are a permitted

---

1. The address is, on this record, uncertain. Since the purchase by appellants it has been stated as 5838 & 5840, 5838 & 5838½ and 5838–5838½.

use. At the time appellants purchased it, it was being used as a seven-unit apartment house. The Zoning Code sets forth the following requirements for such a building:

1. A lot area of 1,000 square feet for each unit.
2. A front yard of 25 feet in depth.
3. A side yard of 25 feet in depth.
4. One off-street parking stall for each dwelling unit.

City of Pittsburgh Zoning Code Sections 937.04, 989.01 (hereinafter Code).

Appellants' lot area is 5341 square feet. The front yard is three (3) feet deep and there is no side yard nor were there off-street parking stalls at the time of the purchase. However, use of the structure as an apartment house, though nonconforming to the physical requirements of the code, was permitted because it existed prior to the enactment of that ordinance.

Following the purchase of the building, appellants subdivided the existing seven (7) units and altered the interior to produce fourteen (14) one-bedroom apartments and a caretaker's unit. They contend that in September 1979, the Zoning Administrator and the Chief Plan Examiner of the Bureau of Building Inspection approved their applications to effect the changes.

On October 16, 1980, a city building inspector certified that the alterations were in compliance with the building code and with the prior application for approval of the work, ostensibly granted by the Plan Examiner's Office on September 19, 1979.

Subsequently, the Assistant Superintendent of the Bureau of Building Inspection issued a Certificate of Temporary Occupancy for eight (8) dwelling units at 5838½, and six (6) dwelling units at 5838 Alderson Street. The certificate was issued on November 6, 1980. The units were leased to tenants and the certificate expired on May 6, 1981.

In December of 1981, the Bureau of Building Inspection notified appellants that their building use was illegal and that a Final Certificate of Occupancy would not be issued.

Appellants applied to the Office of Zoning Administration for an occupancy permit and on April 19, 1982, the Zoning Administrator denied their application as not in compliance with the lot area or parking requirements of the Zoning Code. Their application stated the address of the property as: "5838 & 5838½ Alderson Street". In the space designated DESCRIPTION OF CURRENT OR FORMER USE of the application was stated: "two apartment bldgs. with connection between both thirteen dwelling units and one caretaker dwelling unit" (sic).

Appellants then appealed the denial to the Zoning Board of Adjustment as an appeal for a variance and special exception on area requirements of the Zoning Code. The Board denied their appeal and ordered them to reduce the number of units to seven (7) within thirty days. The Board found the following facts:

Testimony at the hearing indicated that there is a Certificate of Occupancy for the subject structure dated February 25, 1970, for 7 units at this location. A building permit dated May 23, 1968, indicates there were 7 units at this location. Testimony further indicated that the appellant purchased this property on January 15, 1979, and that there were 7 units within this structure at that time. Testimony indicated that the appellant hired a contractor to put the additional units in the property subsequent to the date of purchase. The lot area is slightly more than one-third of that which would be required for the appellant's proposal. Additionally, zero parking stalls are being provided, instead of 15. The appellant originally testified that there were 7 parking stalls provided at this location but further testimony and inquiry indicated that those 7 spaces occupy a portion of the street and sidewalk area. The appellant was informed that those spaces must be removed and measures must be taken that would provide for pedestrian movement in these areas.

Neighbors from the area appeared in opposition to the proposal. The opposition focused upon a severe parking problem in the area. Testimony from opponents also

indicated that the appellant removed the sidewalk to create a parking area for himself, when he visits the property, and for his tenants. Opposition focused generally on congestion in the area.

The Board has determined that the proposed use is detrimental to the abutting and adjacent properties and to the community in general. *The Board has also determined that the Appellant has not met the burden of demonstrating that he qualifies as a legal non-conforming use or that he qualifies for a variance at this location.* In light of the testimony that was submitted, the Board hereby denies the appellant's request. The appellant is ordered to reduce to 7 units within 30 days of this decision. The appellant is also ordered to restore the sidewalk area to pedestrian use and to eliminate the parking spaces that have been created using the sidewalk area and portions of the street.

City of Pittsburgh Zoning Board of Adjustment, Case No. 244 of 1982 (July 22, 1982) (emphasis added).

Appellants then appealed the Board's decision to the Court of Common Pleas (Papadakos, J.)[2] which denied their appeal after a conciliation hearing and filing of a certified record of the proceedings before the board. Court of Common Pleas of Allegheny County, S.A. 612 of 1982 (March 2, 1983).

Appellants then appealed to Commonwealth Court. Pennsylvania Commonwealth Court No. 2738 C.D.1982. On November 13, 1984 however, on praecipe filed by their counsel the appeal was, "withdrawn discontinued and ended." *Id.* Before the Commonwealth Court, the City had joined issue and argued in its brief in opposition that Zullo and Dale, contrary to their contentions, had acquired no vested right to a variance by virtue of occupancy and building permits obtained by fraud.[3] They contended also

2. Mr. Justice Nicholas P. Papadakos, now of this Court.

3. The brief cited an application for an occupancy permit stating, *inter alia,* "The work to be performed was 'general repairs' and representing the use as 'two apartment buildings.'"

that even assuming that the permits at issue were not obtained fraudulently, appellants did not meet the burden of proof necessary to establish their entitlement to a variance in that they failed to prove "unnecessary hardship" or that the variance would not be contrary to the public interest. Brief in Opposition, Pa.Cmwlth. No. 2738 C.D.1982.

While the matters set forth above were still before the Commonwealth Court, appellants acquired an interest in a non-contiguous property nearby at 5831 Morrowfield Avenue. The back yard of the acquired property abutted an unopened city street, Sunapee Way, which intersected with Alderson Street. Appellants' property is located one property from that intersection. Appellants next re-applied for variances to use their structure as a fifteen-unit apartment house, proposing that they be allowed to use the backyard of the Morrowfield property as a parking lot to satisfy partially the code requirement for parking spaces for their building. Again they were refused by the Zoning Administrator and again they appealed to the Board requesting, "variances, review and administrative exception". They sought permission to use their structure as a fifteen-unit multiple-family dwelling with seven (7) out-door parking stalls located at 5831 Morrowfield Avenue. The Board noted in its disposition that the lot area was 5341 square feet rather than the required 15,000 and that "the legal existence of 15 dwelling units is not proven." City of Pittsburgh Zoning Board of Adjustment, Zone Case No. 645 of 1983 (June 14, 1984). The Board reviewed its earlier disposition and order that appellants reduce to seven units. It denied the variances sought and again ordered appellants to reduce to seven (7) units within thirty days of the date of mailing of its decision. *Id.* In its disposition it stated as follows:

Appellant claims that he contacted the Bureau of Building Inspection in 1979 when renovation work began. He stated that the Zoning Administrator approved an application in 1979, and that the Plans Examiner approved plans for 14 units. The work was inspected by the Bureau of

Building Inspection and recommended for Certificate of Occupancy. It was testified that the Bureau of Building Inspection advised the appellant on December 28, 1981, to file for a hearing. Zone Case No. 244 of 1982 was heard and denied.

*The Board has carefully considered all additional testimony in the instant case and is of the opinion that Appellant has for the second time not met the burden of demonstrating that he qualified as a legal nonconforming use or that he qualified for variances at this location.* It is the decision of the Board that the decision rendered under Zone Case No. 244 of 1982 remains in effect, i.e., the variances are hereby denied. Appellant is ORDERED TO REDUCE TO 7 DWELLING UNITS WITHIN 30 DAYS OF DATE OF MAILING OF THIS DECISION.

*Id.* (emphasis added)

Appellants then appealed the decision and order to the Court of Common Pleas. Again they filed a praecipe to discontinue their appeal and that court so ordered. Court of Common Pleas of Allegheny County, No. S.A. 903 of 1984 (July 11, 1984).

Then, on August 13, 1984, the Council of the City of Pittsburgh passed a resolution granting appellant Dom J. Zullo the privilege and license to construct, maintain and use a stairway and sidewalk over a portion of Sunapee Way providing more direct access between his property and the parking at the rear of 5831 Morrowfield Avenue.

Armed with the resolution, appellants filed a second appeal from the adverse ruling by the Zoning Administrator at Case No. 645 of 1983. This appeal was docketed at Case No. 589 of 1984. Their appeal was for variances and a special parking exception. They proposed to occupy their building as a fifteen-unit apartment house with six parking stalls on the Morrowfield Avenue property and three on their building lot.

The Board disapproved two of the parking stalls on the property itself, as proposed, but granted the variances requested, stating:

The Board is of the opinion that occupancy of existing 4-story structure with 1 outdoor parking stall located in the front yard area as a 15-unit multiple family dwelling with 6 remote parking stalls located at 5831 Morrowfield Street with access between the two structures, as granted by Resolution No. 782 of 1984, will not be detrimental to adjacent or abutting properties or to the neighborhood in general. The Board is further of the opinion that the variances involved in this appeal are considered to be minimal for this particular property, and that it would be an undue hardship on appellant to be denied the variances. The variances are hereby granted.

City of Pittsburgh Zoning Board of Adjustment, Case No. 589 of 1984 (October 4, 1984).

The City then petitioned the Board for recission of its third order, this time in appellants' favor, averring that appellants' first application was fraudulent and that the information was not brought to the Board's attention at the last hearing before it. In support of its petition, the City submitted its brief then before the Commonwealth Court in appellants' appeal of the first rejection of their application. The City's petition was filed on November 5, 1984. This was eight days prior to appellants' withdrawal of their appeal to the Commonwealth Court, as we noted above, on November 13, 1984. The Board quashed the City's petition as untimely filed. The City then appealed the Board's last decision to the Court of Common Pleas.

On October 10, 1986, the court cursorily dismissed the City's appeal and affirmed the order of the Board granting the variances, noting tersely that the variances for a one (1) car parking stall and construction of the stairway and sidewalk were supported by substantial evidence. It concluded that there was no abuse of discretion but omitted an analysis for the presence of legal error. Court of Common

Pleas of Allegheny County, Case No. S.A. 1505 of 1984 (October 10, 1986).

The City appealed to Commonwealth Court arguing that appellants had not established "hardship", that their requests for variances were barred as *res judicata,* and that bad faith precluded their appeal. That court disposed of the appeal by deciding in the City's favor on the question of appellants' failure to establish "hardship". It declined to address the remaining issues. *City of Pittsburgh v. Zoning Board of Adjustment,* 112 Pa.Cmwlth. 246, 535 A.2d 278 (1987).

This court then granted appellants' petition for leave to appeal to examine whether their reliance on permits issued by the City entitles them to variances or special exceptions as a vested right, and whether denial of the same by the Commonwealth Court constitutes such hardship and economic waste as to so entitle them in any event.

Before turning to those issues we direct our attention to the City's opposing contention that the doctrine of *res judicata* precludes appellants from seeking relief. It argues that the issue of appellants' entitlement to a variance to use the property as a fifteen-unit multiple family dwelling, having been decided in two earlier actions, may not be relitigated.

 Application of the doctrine of *res judicata* requires the concurrence of four elements. They are: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975); *Fisher Building Permit Case,* 355 Pa. 364, 49 A.2d 626 (1946); *Siegfried v. Boyd,* 237 Pa. 55, 85 A. 72 (1912). However, the doctrine of *res judicata* is applied sparingly in zoning questions. *Schubach.* An order of a court affirming a decision by a zoning board refusing a variance does not preclude a grant of a variance for the same land if there has been a subsequent substantial change in conditions incident to the land itself. *Filanowski*

*v. Zoning Board of Adjustment,* 439 Pa. 360, 266 A.2d 670 (1970); *J.B. Simon & Co. v. Zoning Board of Adjustment,* 403 Pa. 176, 168 A.2d 317 (1961); *In Re Crawford Zoning Case,* 358 Pa. 636, 57 A.2d 862 (1948). *See also Skopic et. al. v. Zoning Hearing Board of Hemlock Twsp. et. al.,* 80 Pa.Cmwlth. 60, 471 A.2d 123 (1984).

 The record discloses that in their last application, unlike those earlier, appellants proposed to provide nine (9) parking spaces for their building, three (3) of which were to be located on their lot and six on the noncontiguous Morrowfield Avenue property. Furthermore, the Code empowers the Board to grant special exceptions which modify parking space requirements when the modification will not be inconsistent with its purpose and intent. Code Section 989.05. The Board's denial of a variance in appellants' second appeal was partially based on the lack of access to the remote parking stalls. In the interim appellants had attempted to cure this deficiency with a stairway and walkway following authorization by City Council. For these reasons, fidelity to the rule requiring that *res judicata* be applied sparingly in zoning matters constrains us to decline to apply the doctrine here where there is minimal identity as to the causes of action as compared with those previous. *Schubach;* However, we note that the doctrine of *res judicata,* subsumes the more modern doctrine of issue preclusion which forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. *Clark v. Troutman,* 509 Pa. 336, 340, 502 A.2d 137, 139 (1985). Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. *Schubach, Philadelphia*

*Marine Trade Association v. International Longshoreman's Association*, 453 Pa. 43, 308 A.2d 98 (1973); *See also Mellon Bank v. Rafsky*, 369 Pa.Super. 585, 535 A.2d 1090 (1987).

Turning to the merits of the appeal we first examine appellants' claim that the City should be estopped from denying them variances which would allow them to use their property in a manner which it previously approved.

▮ The doctrine of vested right to use property contrary to the provisions of a zoning code, without a variance, applies when the owner in good faith reliance upon a permit issued in error, incurs significant non-recoverable costs. *Petrosky v. Zoning Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979); *Sheedy v. Zoning Board of Adjustment*, 409 Pa. 655, 187 A.2d 907 (1963).

▮ The record discloses that Mr. Zullo appeared and testified at the hearing before the Board in the first action. He stated to the effect that his contractor had obtained permits from the proper city authorities allowing conversion of the building from seven (7) to fourteen (14) units. Mr. James Brown, Zoning Administrator, appeared and testified that the application for building permit, to which Mr. Zullo had referred, stated the address as that of two buildings at 5838 and 5840 Alderson Street. Mr. Zullo testified further that he was not the owner of the property at 5840 Alderson.

Implicit in the Board's first determination, that appellants use of the building was not a legal nonconforming use, was a rejection of their contention that the building was converted to the increased use pursuant to the issuance of a permit. Zone Case No. 244 of 1982, *supra.* Following the rejection of their appeal by the Court of Common Pleas in their submission Matters Complained Of On Appeal, appellants argued that they had acquired a vested right to use the building for fifteen (15) units. They constructed their argument to address each of the five factors set forth in *Petrosky.*[4] Then, following a grant of variances by the

4. Those factors, as paraphrased, are:

Board and the City's petition for rehearing and recission, based on its contention that the application for the original conversion was fraudulent, appellants' withdrew their appeal before the Commonwealth Court. This was, as we noted, eight days after the city filed its petition. Thus by their withdrawal, appellants abandoned the issue. The order of the Common Pleas Court was a final order on the merits.

Finally, we note, in the second appeal to the Board, it is succinctly stated that the legal existence of fifteen (15) dwelling units was not proven, Zoning Case No. 645 of 1983, *supra*, and, after appealing this determination to the Court of Common Pleas, appellants again withdrew their appeal. Court of Common Pleas of Allegheny County, Civil Division, No. S.A. 903–1984, *Supra.*

We conclude from the sequence set forth above that the issue of whether appellants met the *Petrosky* test is premised upon a factual determination that they obtained permits to convert the building and expand its use in the first instance. But that factual issue has been finally litigated to their detriment as has been shown. They are thus estopped from arguing the factual existence of permits. *Clark, supra.* As a consequence, they are unable to establish the first premise of the test for a vested right; that they exercised due diligence in attempting to comply with the law. *Petrosky.* We revisit the issue of permits in the context of hardship below.

■ In their second complaint, appellants first contend that the Board misconstrued the relief they requested as a

(1) Whether one has exercised due diligence in attempting to comply with the law
(2) Whether one has exercised good faith throughout the proceedings
(3) Whether one has expended substantial unrecoverable funds
(4) Whether the period during which an appeal from the permit could have been taken expired without such appeal
(5) Whether there is insufficient evidence to prove that individual property rights on the public health, safety or welfare would be adversely affected by the use of the permit. Id.

variance, when all that was required was a special exception.

The record before us shows that the property is located in an R–4 area in which multi-family dwellings are a permitted use. Although the area and setback characteristics of the property are nonconforming to the provisions of the code, these relate to physical nonconformity, not use nonconformity. The use of the building as an apartment house, whether of seven (7) or fifteen (15) units is a conforming use in terms of the Code. Code section 903.02(n). As a conforming use the property was not entitled to a right of natural expansion. *Compare Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969), *with Immordino v. Morrisville Zoning Hearing Board*, 65 Pa.Cmwlth. 79, 441 A.2d 818 (1982). Neither, as a conforming use, was the property entitled to a special exception on the basis of the increase in the proposed number of parking spaces alone. Although the Code empowers the Board to modify parking space requirements in R–4 districts by special exception, Code section 989.05, appellants can point to no power in the Board, which as applied to their building, would allow for modification of area, setback and side yard regulations except by variance permitting the proposed intensified use. *See Melwood Corp. v. Zoning Board of Adjustment, City of Pittsburgh*, 107 Pa.Cmwlth. 246, 528 A.2d 668 (1987). Theirs was an application for variances.

In support of their claim of error in the Commonwealth Court decision, appellants contest the statement that "This conversion was effectuated before a permit allowing such conversion was granted to appellees." *City of Pittsburgh*, 112 Pa.Cmwlth. at 248, 535 A.2d at 279. They contend rather, that the City issued permits before they converted the building. They urge that the work was completed in reliance on the permits. They argue further that they spent $94,000 to purchase the building, $275,000 to "renovate" it and $70,000 to acquire parking space at the Morrowfield Avenue property. They conclude that denial of variances therefore constitutes "unnecessary hardship".

■■■■■ As we noted above however, the issue of wheth-
er appellants obtained the necessary permits is an issue of
fact determined to their detriment, in two previous actions.
It may not be contested here.[5] With respect to the question

5. Both parties have submitted copies of the form: APPLICATION for
OCCUPANCY PERMIT AND/OR BUILDING PERMIT as appendices
to their briefs.

Appellants submit the reverse side of the form which shows the
following pertinent information:
Section 5. PERMIT INFORMATION
Permits required: one (1)
Occupancy × Alteration/Repair ×
Building Permit Number: R1903,
Date issued 9/20/79
Section 7. BUILDING INSPECTION REVIEW
No. of Dwelling Units: *14* No. of stories: *3*
Description of work: Renovate exist. 13 dwelling units-no struc-
tural changes
Approved for compliance with the building code: (signature) 19
Sept. 79.
"The premises have been examined on *10/16/1980* and are certi-
fied by me to be in compliance with this application and building
code (citation) as applicable. Therefore *a certificate of occupancy
shall issue.*"
Senior Inspector (signature) 10/16/80
Section 8. ZONING REVIEW
Occupancy Permit Application No. *4779* date *9/20/79*
USE: continuation conforming
STRUCTURE: continuation conforming
*Occupancy permit to be issued for: thirteen dwelling units with
one caretaker dwelling unit.*
Appellees submit a copy of the face of the form which contains the
following pertinent entries:
Section 1. IDENTIFICATION
Application for property at: 5833 & 40 Alderson Street
Description of work to be performed: General Repairs
Describe the *current* or former use of the property in detail:
"Two Apartment BLDGS with connection between both. Seven
dwelling units each (one is for janitor)
THIS PORTION TO BE FILLED OUT BY APPLICANT WITH THE
ASSISTANCE OF THE CLERK
Section 2. *LAND AND STRUCTURE*
Lot area net: 10,800 sq. ft. ±
Height in stories: 3
Section 3. RESIDENTIAL USES
Number of Dwelling Units *Existing:* 14
Number of Dwelling Units *Proposed:* 14
Section 4. STATEMENT OF COMPLIANCE
Deponent being duly sworn says that he is the owner of record of
the property for which this application is made and that all the

of "hardship", since it does not appear of record that additional evidence was presented subsequent to the Board's decision, the scope of our review is limited to determine whether the Board committed a manifest abuse of discretion or an error of law in granting the variances at issue. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. *Id.* The party seeking a variance bears the burden of proving (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest. *Id.* The hardship must be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Id;* Mere economic hardship will not of itself justify a grant of variance. *Id; Appeal of Bilotta,* 440 Pa. 105, 270 A.2d 619 (1970). The rule is particularly applicable to a purchaser who knew how his property was zoned at the time of purchase. *Bilotta.* Self-inflicted economic hardship is not justification for grant of variance. *Id.*

The record of the proceedings before the Board discloses the presence of no evidence which would tend to prove unnecessary hardship peculiar to appellants' property of the type required by the rule of *Valley View.* Any existing hardship was merely economic and did not empower the Board to grant variances. *Bilotta.* We specifically reject appellants' claim that the expansion of their property from seven (7) to fifteen (15) units in their nonconforming structure, the source of their alleged hardship, was effected in reliance on city permits, since whatever permits were issued were based on information in their application(s) which was false, yet nevertheless attested to by appellant

statements and data furnished with this application are true and correct.

Sworn to and subscribed before me this *19th* day of Sept *1979* (signature)x *Dominick Zullo.*

Zullo. *See* note 5, *supra.* Their economic hardship if any, was manifestly self-inflicted. *Bilotta.*

The order of the Commonwealth Court is affirmed.

LARSEN and PAPADAKOS, JJ., did not participate in the consideration or decision of this case.

STOUT, Former Justice, did not participate in the decision of this case.

NIX, C.J., concurs in the result.