630 A.2d 1224

Arlene STERLING and Maxine Abrams
and Irving Abrams, Appellants,

v.

Anne FINEMAN & Henry Fineman and Arlene
Sterling, Additional Defendant.

Arlene STERLING and Maxine Abrams and Irving Abrams

v.

Anne FINEMAN & Henry Fineman and Arlene
Sterling, Additional Defendant.

Appeal of Anne and Henry FINEMAN, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 14, 1993.

Filed July 23, 1993.

Reargument Denied Oct. 1, 1993.

234

Allen L. Feingold, Philadelphia, for Sterling and Abrams.

Robert B. Goss, Norristown, for Fineman.

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

Before us are cross-appeals from the granting of summary judgment below. The appeals arise out of a recently instituted program, implemented for the purpose of reducing the case backlog on the overburdened civil docket of the Philadelphia County Court of Common Pleas. Commonly referred to as the Judge *Pro Tem* Program, the system has been variously described and reported upon by the Legal Intelligencer, Philadelphia County's daily legal newspaper. Essentially, the program employs experienced litigators to preside over civil jury cases. Upon disposition, either by jury verdict or otherwise, if either party is dissatisfied they may take exceptions to a supervising judge of the Court of Common Pleas, who, sitting with the judge *pro tem*, hears the exceptions, reviews the pertinent portions of the record, and resolves the exceptions. Instantly, exceptions in the form of a petition to strike, open, set aside, or reconsider were taken to the granting of summary judgment in defendants' favor by the judge *pro tem*. Judge Nelson Diaz of the Court of Common Pleas heard the exceptions and granted summary judgment in defendants' favor.

This case presents cross-appeals to the resolution below.[1] Plaintiffs challenge the granting of summary judgment by Judge Diaz, who ruled so on a collateral estoppel basis. Defendants, on the other hand, contend that initial summary judgment granted by the judge *pro tem* was a final and appealable order and that Judge Diaz should not have enter-

---

1. Because cross-appeals have been filed, we will refer to the parties in the manner they were designated below, as plaintiffs and defendants, in order to avoid confusion.

tained plaintiffs' exceptions. Defendants are appealing Judge Diaz's denial of their Motion to Quash.

The record before us presents a rather uncomplicated factual situation, but a rather more convoluted procedural milieu.

On September 6, 1983, plaintiff Sterling was involved in an automobile collision with defendant Anne Fineman. Plaintiff Abrams was a passenger in the Sterling vehicle. A hit-and-run driver was also involved in the subject accident. The negligence of this "phantom driver" was at least in part responsible for plaintiffs' injuries.

Pursuant to the terms of plaintiff Sterling's insurance policy and in accord with the Uninsured Motorist Act, 40 P.S. § 2000, plaintiffs instituted an uninsured motorist action against plaintiff Sterling's insurance carrier. The instant suit out of which these appeals arise was filed during the pendency of the uninsured motorist suit.

The uninsured motorist action was heard by a panel of arbitrators who found in favor of plaintiffs, awarding plaintiff Sterling $40,000 in damages and plaintiff Abrams $50,000 in damages. Policy limits of the insurance were $100,000 per person and $300,000 per occurrence.

Meanwhile, plaintiffs' action against defendants, after several procedural turns of no importance here, was eventually assigned to be heard by Judge *pro tem* Thomas Rutter.

Prior to trial, defendants presented Judge *pro tem* Rutter with a Motion for Summary Judgment.[2] The basis of defendants' motion was that plaintiffs were collaterally estopped from raising the issue of damages which they had previously litigated in the uninsured motorist action. Defendants argued that the prior lawsuit had sought recovery for all claims resulting from the accident and that these were fully compensated as evidenced by the fact that the awards were less than the policy limits.

**2.** Actually, the motion was styled as a Motion to Dismiss which Judge *pro tem* Rutter chose to treat as a Motion for Summary Judgment. Notes of testimony, 1/28/92 at 73. The case was originally assigned to the judge *pro tem* for a trial on liability.

Plaintiffs, on the other hand, maintained that in the uninsured motorist suit they litigated and were awarded damages only for injuries which had been realized from the date of the accident until the date of the arbitration hearing. Plaintiffs argued that the damages sought in the instant suit were for injuries accruing after the uninsured motorist award, maintaining that both plaintiffs had incurred significant additional medical expenses since the date of the arbitration award. The judge *pro tem* concluded that the damages sought in the instant action were identical to those recovered in the uninsured motorist suit, were barred by collateral estoppel, and granted summary judgment in favor of defendants.

The summary judgment order was entered February 7, 1992. Plaintiffs did not file a Notice of Appeal to the Superior Court, but instead filed a petition to strike, open, set aside, or reconsider summary judgment. Defendants responded with a motion to quash. On May 29, 1992, Judge Nelson Diaz entered an order and opinion granting summary judgment and denying all post-trial motions.

The issues thus presented on these appeals are two-fold. First, plaintiffs argue that Judge *pro tem* Rutter erred in granting summary judgment. Second, defendants argue that Judge Diaz erred either in confirming that summary judgment, or in granting it anew, and in failing to quash plaintiffs' petition. Before we may resolve the propriety of the granting of summary judgment by either Judge *pro tem* Rutter or by Judge Diaz, we must first resolve the procedural issue as to whether Judge Diaz could properly have reviewed the petition to reconsider summary judgment.

Defendants argue that the granting of summary judgment by the judge *pro tem* represented a final, appealable order and that appeal should have been taken directly from the ruling of the judge *pro tem*. While we agree with defendants that summary judgment is ordinarily a final and appealable order for which post-trial exceptions are not allowed and which initiates the running of the appeal period, *Burkhart v. Brockway Glass Company*, 352 Pa.Super. 204, 507

A.2d 844 (1986), *allocatur denied,* 514 Pa. 615, 521 A.2d 930 (1987), we disagree with defendants' analysis within the context of the Judge *Pro Tem* Program. We feel that the Judge *Pro Tem* Program anticipates that excepted rulings of a judge *pro tem* will first be reviewed by a judge of the Court of Common Pleas. We note with regret that no written procedural rules exist for the Judge *Pro Tem* Program. However, the intent of the program's creators may be gleaned from the pronouncements of the Court of Common Pleas:

> These attorneys [selected to sit as judges *pro tem*] will preside at the jury trials and make all necessary rulings. Should post trial motions follow the conclusion of the trial, they will be argued before the Judge Pro Tem who will be sitting with a Judge of the Court of Common Pleas and *a final order will be issued by such Judge* preserving all issues for appellate review, if necessary.

Court Notices, *The Legal Intelligencer,* 6/10/91 at 9 (emphasis added).

We perceive a clear intent on the part of the Court of Common Pleas to create a system whereby any disputed ruling of a judge *pro tem* would be reviewed first by a judge of the Court of Common Pleas before it would become a final, appealable ruling. Instantly, even Judge *pro tem* Rutter questioned whether he had the authority to entertain the Motion to Dismiss and grant summary judgment since the case had been assigned to him solely to try the liability claims.

Moreover, there is simply no basis, statutory or otherwise, which would authorize the Superior Court to review any order of a judge *pro tem.* The judge *pro tem* is an ad hoc creation of the Philadelphia County Court of Common Pleas without formal recognition before this court. We have no authority to review the rulings of a judge *pro tem.* The statutory authority for our appellate review is exclusively limited to the final orders of the judges of the courts of common pleas:

### § 742. Appeals from courts of common pleas

The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, . . .

42 Pa.C.S.A. § 742. Thus, contrary to defendants' assertion, plaintiffs could not have appealed Judge *pro tem* Rutter's grant of summary judgment to this court. It was not until Judge Diaz reviewed the record and granted summary judgment that a final, appealable ruling existed which was cognizable by this court. At that juncture and only at that juncture could an appeal be taken to this court.

Having decided that plaintiffs' challenge to the granting of summary judgment by Judge Diaz is properly before us, we turn to that issue. We note first our standard of review in matters of summary judgment:

Summary judgment is only proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b), 42 Pa.C.S.A. The movant must demonstrate that no genuine factual issues exist and that he is entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–06, 412 A.2d 466, 468–69 (1979). An appellate court must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 297, 467 A.2d 330, 333 (1983). All doubts must be resolved against the movant, as summary judgment is only proper in the clearest case. *Thompson Coal, supra*, 488 Pa. at 202–06, 412 A.2d at 468–69. Nonetheless, the grant of summary judgment will only be reversed for an error of law or a clear abuse of discretion. *Jones v. Keystone Insurance Co.*, 364 Pa.Super. 318, 322, 528 A.2d 177, 179 (1987), *alloc. denied*, 518 Pa. 613, 540 A.2d 535 (1988) (citation omitted).

*Carns v. Yingling*, 406 Pa.Super. 279, 282, 594 A.2d 337, 339 (1991).

We now resolve the issue of whether summary judgment was proper instantly. We believe that the case before us is

controlled by direct precedent. Judge *pro tem* Rutter cited several related cases in the discourse connected to his ruling.[3] Of the cases recited, we find that, *Incollingo v. Maurer*, 394 Pa.Super. 352, 575 A.2d 939 (1990), *allocatur denied*, 526 Pa. 636, 584 A.2d 318 (1990), *Phillip v. Clark*, 385 Pa.Super. 229, 560 A.2d 777 (1989), *allocatur denied*, 527 Pa. 649, 593 A.2d 421 (1990), and *McNally v. Dagney*, 353 Pa.Super. 402, 510 A.2d 722 (1986), are most germane to our inquiry.

In *Incollingo v. Maurer, supra,* William J. Incollingo was injured when a truck operated by Keith Alan Maurer swerved to avoid another vehicle which had stopped suddenly (the "phantom" vehicle) and instead hit Incollingo's car. Incollingo brought suit under the uninsured motorist provisions of his own auto policy carrier charging negligence on the part of the phantom driver. The phantom driver was found negligent and Incollingo was awarded $70,000. The policy limits were $90,-000. Subsequently, Incollingo and his wife brought suit against Maurer. The trial court granted summary judgment on the basis that the Incollingo's had already been compensated for their full damages.

██ On appeal to this court, we applied the five requirements of the collateral estoppel doctrine[4] and concluded that a plaintiff is collaterally estopped from asserting a claim for damages against a tortfeasor where the plaintiff has already

---

**3.** Notes of testimony, 1/28/92 at 73. Moreover, when Judge Diaz reaffirmed the grant of summary judgment, his order and opinion specifically referenced this transcript discourse. *See* Order and Opinion, 5/29/92.

**4.** The five requirements of the collateral estoppel doctrine are as follows:

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Incollingo* at 355, 575 A.2d at 940, *quoting City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989).

pursued the same claim and been awarded full compensation in a prior uninsured motorist action. Full compensation is demonstrated where the amount awarded is less than the coverage of the insurance.

The *Incollingo* court based its analysis on the fact that a review of the record of the arbitration proceeding left no doubt that the damages sought by the plaintiff in the subsequent civil action were a duplication of the damages sought in the arbitration proceeding. In arriving at its decision, the court referenced a prior decision of the court in *Phillip v. Clark, supra.* The court found *Phillip* analogous and quoted from it at length.

Although that case involved recovery from the Pennsylvania Insurance Guaranty Association, the *Phillip* court did not find this to be a significant distinction. Rather, addressing the collateral estoppel argument, the court therein stated:

> In analyzing appellee's collateral estoppel argument it must be remembered that although appellants had recovered from their own carrier, due to the uninsured motorist context, appellants could be said to have been in a constructive adversarial relationship with that carrier. The essence of uninsured motorist coverage is that the insured's carrier will provide the liability coverage of the negligent tortfeasor where the tortfeasor does not do so himself. Thus, the insured's carrier, in a constructive sense, takes the place of the alleged tortfeasor's carrier and the insured, to recover, must establish the liability of the tortfeasor in the same manner as if proceeding directly against the alleged tortfeasor himself. One would presume, as well, that the interests of the insured and insurer also take on an adversarial relationship as well. The insured would naturally try to recover as much as possible while the insurer, in order to minimize its own liability, would advocate against an excessive assessment of damages. Thus, there is compelling reason to consider the arbitration award a fair and final litigation of appellant's damages, and the similarity in position of the alleged tortfeasor and the uninsured motorist carrier would seem to also militate toward allowing collater-

al estoppel effect to the arbitrator's award. This analysis would pertain to an ordinary uninsured motorist case and seems, at least implicitly, recognized in *McNally v. Dagney. Phillip v. Clark* at 232, 560 A.2d at 779.[5]

*Incollingo* also addressed the applicability of *McNally v. Dagney*. In *McNally*, a case premised on substantially the same facts as *Incollingo*, we determined that, "[The plaintiffs] are not entitled to recover duplicate damages, and thus it was necessary for the lower court to review the record of the arbitration proceeding to determine if such recovery was being sought in the instant case." 353 Pa.Super. at 405, 510 A.2d at 724. However, the problem for this court in *McNally*, unlike *Incollingo* and *Phillip*, was the sorry state of the record before the court as it pertained to the prior uninsured motorist action. It was simply impossible for the court on appeal to determine from the record whether the same claims had been pursued earlier in the uninsured motorist action. Thus, the *McNally* court was required to remand for further proceedings in order to augment the record.

■ Instantly, the judge *pro tem*, fully cognizant of this procedural problem in *McNally*, also found himself severely handicapped in that there was no record of the arbitration proceeding which occurred in this case.[6] Further, defendant's attempt to depose an arbitrator was challenged by Mr. Feingold, counsel for plaintiffs, and quashed. Hence, Judge *pro tem* Rutter requested both Mr. Feingold, who had represented plaintiffs at the arbitration, and Attorney Pease, who had represented plaintiff Sterling in the uninsured motorist action in her capacity as a defendant, to state on the record to the best of their recollections, the nature of the damage claims before the arbitration panel. Attorney Feingold agreed to this request.[7] Attorney Pease stated that at the arbitration,

5. We note with interest that Attorney Feingold, plaintiffs' instant counsel, also represented plaintiffs/appellants in *Phillip*.

6. We note with continuing interest that Attorney Feingold also represented plaintiffs/appellants in *McNally*.

7. Notes of testimony, 1/28/92 at 67–68.

the witnesses did testify to the need for continuing treatment.[8] Mr. Pease was then unclear as to any testimony which discussed what the continuing treatment would entail. Additionally, Mr. Pease, based on lack of information regarding the injuries and damages involved in the civil suit, was unable to state that the same damages were involved in the arbitration. Thereafter, the following exchange occurred between Judge *pro tem* Rutter and Mr. Feingold:

THE COURT: I may be able to help us, Mr. Feingold, and you don't have to answer us if you don't want to.

The injuries for which your client seeks compensation in this case, are they the same injuries, i.e., back injury or neck injury or whatever the injury was for which compensation was sought in the arbitration proceeding?

MR. FEINGOLD [COUNSEL FOR PLAINTIFF]: I have to answer that two different ways, because there are two different Plaintiffs.

For the Plaintiff Passenger, some of the injuries are the same. Some are totally different and were never testified to or brought up at the time of arbitration.

THE COURT: Did they exist at the time of the arbitration?

MR. FEINGOLD: Example being some did not exist even. She was having dizzy spells and problems like that, I believe, or bad headaches.

As a result of one of these spells, and I haven't read the testimony in a long time, she fell and seriously injured her leg. Years after the arbitration.

So this leg injury is totally separate and totally different but brought on by a continuing problem.

THE COURT: Before you get away from that, but you would nonetheless in the damages hearing in this case have to contend the automobile incident which brings us here was a substantial factor in bringing about the leg injury. Right?

MR. FEINGOLD: Yes. Additionally, certain doctors treated the Passenger Plaintiff for, let's say, a back injury as an orthopedic injury while later it was treated by the other

8. Notes of testimony, 1/28/92 at 69.

244

doctors as a different condition or needing different specialists.

The passengers, their treatment, for want of a better word, is substantial after the arbitration.

The driver's treatment, as far as I know, because she has a husband who is a lawyer and I may not have been privy to all information over the years, I only know of limited treatments since the accident.

THE COURT: And limited treatment of the same injuries or disabilities which were the subject of the arbitration.

MR. FEINGOLD: I believe so. Without having everything in front of me but I believe so.

Notes of testimony, 1/28/92 at 70–72. It was based on this exchange that the judge *pro tem* determined the damages sought in the instant civil action were damages for injuries plaintiff was compensated for in the arbitration proceeding. Based on the record before this court, we agree.

On remanding for further proceedings in *McNally,* we stated as follows:

To the extent that appellants are submitting the same *claims,* appellees may be correct in their assertion that appellants are collaterally estopped from relitigating the *amount of damages* awarded on *those claims.*

*McNally* at 407, 510 A.2d at 725 (emphasis in original).

Instantly, plaintiffs proceeded in arbitration on the theory that the phantom driver caused the accident and the resulting injuries. Plaintiffs are not before us contending that the claims raised in the prior arbitration are different from those raised instantly. Rather, plaintiffs argue that the *damages* sought previously differ from those demanded instantly in that they have been incurred since the arbitration. However, the injuries (claims) upon which these new and different damages are based remain the same as were heard in the prior arbitration. Indeed, counsel's own statements reflect that the additional damages sought are those incurred in the continued treatment of the same injuries. We believe that based upon the authority of *Incollingo,* we must reject plaintiffs' argu-

ments herein and hold that summary judgment was properly granted. The present state of the law would hold that where a plaintiff has previously litigated a claim under the uninsured motorist provisions of an insurance policy, he is collaterally estopped from pursuing the same claim of injury again against a new defendant even though he may have incurred additional damages.

Accordingly, the summary judgment dated May 29, 1992, is affirmed. Jurisdiction relinquished.

DEL SOLE, J., files a concurring statement.

McEWEN, J., files a dissenting statement.

DEL SOLE, Judge, concurring.

I join the Opinion of my esteemed colleague, Judge Ford Elliott, in her analysis of the procedures to be followed for the Judge *Pro Tem* Program.

Since we are required to follow *Incollingo v. Maurer,* 394 Pa.Super. 352, 575 A.2d 939 (1990), I also reluctantly join her analysis on this issue. However, I believe *Incollingo* is incorrectly decided since it confused contract recovery with tort recovery and should be revisited.

McEWEN, Judge, dissenting.

When one differs with the view of two such insightful colleagues, brevity is the far wiser course. Thus it is that I simply observe that I am of the mind that the doctrine of collateral estoppel should not have been applied and summary judgment granted because the defendants did not establish that the damages sought by plaintiffs in the instant civil action are a duplication of the damages presented in the arbitration proceeding.