## Malik v. Lehigh Valley Balloon Festival Inc. (No. 2)

C.P. of Lehigh County, no. 90-C-2320.

*Richard E. Genter,* for the estate of Malik.
*Clifford E. Haines,* for the estate of Miller.
*Daniel P. Leonard,* for the estate of Remo.
*Evans W. North,* for Bhatti.
*Patrick J. O'Connor,* for defendant, Queen City Aviation, Inc.

WALLITSCH, *J.,* August 29, 1994—Defendant Queen City Aviation Inc. has filed a second motion for summary judgment, arguing two separate reasons why judgment should be entered in their favor as a matter of law. The first contention relates to the issue of duty and the second to the issue of collateral estoppel. The facts of this airplane crash involving two planes and the tragic deaths of the seven occupants were set forth in this court's opinion of *Malik v. Lehigh Valley*

*Balloon Festival Inc.,* 20 D.&C.4th 41 (1993), and they will not be repeated here.

Queen City first argues that it had no duty to close the airfield or warn the planes of the other's activities in the traffic pattern on the day of the accident. Queen City further argues that it had no duty to either plane since the Federal Aeronautics Administration owed the only duty to them. We disagree with both of Queen City's contentions.

"Duty" in the law of negligence is occasionally misconstrued and made more complex than is warranted. Lawyers and judges often subdivide the duty issue to "cover an endless series of details of conduct." W. Page Keeton et al., Prosser and Keeton on the Law of Torts, §53 (5th ed. 1984). Instead, these authors suggest that it is better to "reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. [Duty, then,] is a question of whether the defendant is under any legal obligation for the benefit of a particular plaintiff." *Id.* at 356.

Applying the above concept to the facts of this case as submitted by the parties in the motion for summary judgment, we have no reluctance in finding that Queen City owed a duty to the plaintiffs.

We do not phrase our "duty" decision as whether Queen City had a duty to warn the Bonanza of an irregular descent by the Cessna through the use of UNI-COM or otherwise. We do not phrase the "duty" issue as whether Queen City had a duty to close the runway of the airport it was operating for non-balloon festival air traffic while parachute jumping was occurring. We also do not phrase the duty issue as whether Queen

City had a duty to stop these allegedly irregular descents. Instead, we look to whether, under the facts of this case, Queen City's relationship with the plaintiffs herein was such that it was under a particular legal obligation to them.

Although it may be disputed by Queen City at time of trial, given the evidence submitted by the plaintiffs in opposition to the motion for summary judgment it is at least a jury issue as to whether or not Queen City was the airport operator/manager. Assuming as we must that Queen City was functioning as the airport operator, that status creates a special relationship with the plaintiffs. Cases cited from other jurisdictions have recognized the duty of an airport operator to pilots using its airport. In *Safeco Insurance Co. v. City of Watertown,* 529 F. Supp. 1220, 1226 (D.S.D., N.D. 1981), the federal district court held that an operator of a public airport had a duty independent of federal statutes and regulations to the pilots using the airport to use reasonable care to keep the airport free from hazards, or at least use reasonable care to warn of hazards not known to the pilots.

Additionally, the court in *Traudt v. City of Chicago,* 581 Ill. 242, 240 N.E.2d 188, 189 (1968) cited a popular legal treatise addressing the duty issue:

"The law places on the proprietor of an airport or airfield the obligation to see that it is safe for such aircraft as are entitled to use it, and to give an appropriate warning of any danger or hazard of which the proprietor knows or should know and of which the pilot of an aircraft does not know or may not reasonably be deemed to know. 8 Am.Jur.2d Aviation §79 (1968)."

Moreover, Federal Aviation Regulation part 105.17, which has the force and effect of law, *United States*

*v. Schultetus,* 277 F.2d 322 (5th Cir. 1960), *cert denied,* 364 U.S. 828 (1960), provides:

"Unless prior approval has been given by the *airport management,* no person may make a parachute jump, and no pilot in command of an aircraft may allow a parachute jump to be made from that aircraft—

"(a) Over an airport that does not have a functioning control tower operated by the United States; or

"(b) Only any airport." (emphasis added)

In the present case, Queen City chose to sublease, for monetary consideration, part of the airport premises to the air show, which included the parachute jumping event. The Bonanza was a home field aircraft, housed at Queen City for consideration. The occupants of those airplanes could certainly be considered business invitees under the laws of the Commonwealth of Pennsylvania. The deposition testimony reveals that Queen City had created a safety plan with the pilot of the Cessna relating to its sightseeing planes at the air show. Moreover, on the day preceding this collision, Bill Wildman, the vice-president and chief pilot for Queen City, allegedly spoke with the Cessna pilot and asked him to "spiral his descent south of the field," thereby exercising control over the Cessna's activities.

Given these facts, we find that a duty existed on the part of Queen City to exercise reasonable care for the safety of these plaintiffs. It will be up to the jury to fill in the details of the general standard of conduct required of Queen City—to act as a reasonable airport operator under all of the circumstances of this case. Whether or not Queen City breached the duty of reasonable care by failing to close the runway, by failing to warn of the irregular descent of the Cessna, by failing to stop such irregular descents, or by any other pleaded and proven manner will be left to the jury.

Queen City argues that there is no duty on its part because no other reported case imposed a duty upon an airport operator when a collision of two planes occurred mid-air. We fail to see the logic of this distinction. While it is true that a pilot in command has the ultimate responsibility for his aircraft's safe operation, and must "see and avoid" other aircraft, the duties of the pilots and the airport managers are not mutually exclusive. More than one actor may owe a duty to a plaintiff and the breach of the duty by more than one of them makes them jointly responsible for the harm caused thereby. We similarly reject Queen City's contention at argument that only the FAA had a duty to the airplanes which negated Queen City's duty.

Queen City argues, phrasing the argument in terms of "duty," that it had no responsibility to warn or control the planes through the UNICOM system which was in use at the airport on the day of this accident. UNICOM, an aeronautical advisory service, is an aid to pilots operating at smaller airports with no tower, and is used by pilots to obtain certain flight information. Queen City is really arguing that the failure to use UNICOM may not be considered to be a breach of the standard of conduct required of an airport because such advisory service must not be used for air traffic control purposes. 47 C.F.R. §87.213(c). While we have no argument with this contention, the plaintiffs apparently are not arguing that UNICOM should have been used for "air traffic control" purposes, *i.e.,* to separate aircraft from each other by instruction or clearance. Instead, their argument is that UNICOM could have been used to temporarily close down a runway or to notify planes in the vicinity that the Cessna was using

an "irregular" landing pattern. We see nothing improper about such an argument for purposes of the summary judgment motion.

Queen City's second major contention is that the doctrine of collateral estoppel precludes the plaintiffs from litigating their claims against it. The doctrine of collateral estoppel precludes a question of law or an issue of fact which has once been litigated in a court of competent jurisdiction from being relitigated in a subsequent proceeding. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Banker v. Valley Forge Insurance Co.*, 401 Pa. Super. 367, 376, 585 A.2d 504, 509 (1991); *Mellon Bank v. Rafsky*, 369 Pa. Super. 484, 535 A.2d 1090 (1987). See also, *Alberici v. Tinari*, 374 Pa. Super. 20, 542 A.2d 127 (1988), *appeal denied*, 534 Pa. 652, 627 A.2d 730 (1993).

The reasoning behind the doctrine is the protection of litigants from relitigation of an identical issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation. *Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985). See also, *Parklane, supra* at 326 (addressing the doctrine of collateral estoppel).

Collateral estoppel may be used as a sword, or as a shield, by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action. *Grant v. GAF Corp.*, 415 Pa. Super. 137, 150, 608 A.2d 1047, 1054 (1992). (citations omitted) Queen City properly asserts this doctrine as a shield, *i.e.,* defensively,[1] against the plaintiffs.

---

1. The United States Supreme Court explained the defensive use of collateral estoppel in *Parklane:* "Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the

Under Pennsylvania law, the doctrine of collateral estoppel is activated when the following conditions are met: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action. *Schroeder v. Acceleration Life Insurance Co. of Pa.,* 972 F.2d 41, 45 (3d Cir. 1992); *City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989); *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975). See also, *Banker v. Valley Forge Insurance Co., supra* at 376, 585 A.2d at 509.

In the present situation, plaintiffs also brought an action in federal court against the FAA, claiming that the air traffic controller "working" the Cessna failed to notify the pilot of the proximity of the Bonanza. This cause came for trial before United States District Court Judge Franklin Van Antwerpen, who issued a decision and order dated May 16, 1994. Queen City contends that this decision precludes further litigation by the plaintiffs. We disagree.

Although we see a number of reasons why Queen City cannot prevail through the use of the doctrine of collateral estoppel, we need only reach the first sub-issue. We find that the issue decided by Judge Van Antwerpen was not identical with the issue presented here. As already described, the issues in this case center on Queen City's alleged negligence as airport operator in failing to use reasonable care for the safety of the plaintiffs. The federal court never considered Queen

---

plaintiff has previously litigated and lost against another defendant." *Id.* at 326 n.4.

City's liability and only litigated the issue of the air controller's alleged negligence. The mere fact that both actions arose out of the same event does not mean that they involve the same issues. Collateral estoppel only forecloses relitigation of issues which were actually litigated and that were necessary to the first judgment. *Sterling v. Fineman,* 428 Pa. Super. 233, 630 A.2d 1224 (1993).

For the above reasons, we deny Queen City's second motion for summary judgment.

### ORDER

And now, August 29, 1994, upon consideration of the second motion for summary judgment of defendant Queen City Aviation Inc., the responses thereto, the written briefs and oral arguments thereon, and for the reasons expressed in the accompanying opinion, it is hereby ordered that the second motion for summary judgment of defendant Queen City Aviation Inc. is denied.