**Vukmir v. University Anesthesiology and Critical Care Medicine Associates**

C.P. of Allegheny County, no. GD 99-0134.

*Charles E. Boyle,* for petitioner.
*Martin J. Saunders,* for respondent.

FRIEDMAN, *J.,* April 12, 1999—The petitioner has appealed this court's order of January 28, 1999 in which we refused to compel the respondent to arbitrate a contract dispute. The issue is whether a court may apply the doctrine of collateral estoppel when deciding a petition to compel arbitration, denying the petition to compel because issues critical to the dispute sought to be arbitrated have already been finally adjudicated by another court. The issue appears not to have been previously addressed by the appellate courts, possibly because it is axiomatic. After argument, we concluded that a court *may* apply the doctrine of collateral estoppel in such a situation, and we denied the petition filed by petitioner in the captioned case.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner, Rade B. Vukmir M.D. has appealed from this court's order dated January 28, 1999, in which we denied his "petition/application for an order directing arbitration according to provisions of agreement."[1] Although the petition does not say so in so many words, the dispute which Dr. Vukmir seeks to have arbitrated is whether his employment with the respondent, Uni-

---

1. Although this court entered an order directing the petitioner to file a statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b), Dr. Vukmir has not complied. It is believed that any issues he might have raised on appeal may therefore have been waived. See *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998); *Dollar Bank v. Swartz,* 540 Pa. 369, 657 A.2d 1242 (1995). We leave it to the Superior Court to make that determination.

versity Anesthesiology and Critical Care Medicine Associates (UACCMA), was improperly terminated.

In addition to being employed as a physician by UACCMA, Dr. Vukmir had also been a "non-tenure stream" assistant professor with the University of Pittsburgh. (UACCMA's brief in support of objections to petition, p. 2.) Dr. Vukmir's employment with UACCMA was governed by a contract, which was entered into on July 1, 1991 and which may be found in its entirety in "defendant's appendix to brief in support of objections" at tab J. The section of the contract which governed Dr. Vukmir's term of employment contained a provision linking his employment by UACCMA with his appointment as a faculty member at the University of Pittsburgh. That section of the contract is set forth in its entirety below:

"*Section 1. Term of employment* The corporation shall employ the professional employee from the effective date of this contract until the last day of the professional employee's full-time faculty appointment to the faculty of the University of Pittsburgh School of Medicine, unless this contract is terminated pursuant to the provisions herein. It may be automatically renewed if mutually agreeable, to coincide with any successive term(s) of the professional employee's faculty reappointment."

The facts of record are set forth as follows in respondent's brief (petitioner has not disputed them and they are not contradicted by the averments of his petition): "In October 1996, the university made the decision not to reappoint applicant to its faculty. Under the terms of his contract with UACCMA, applicant was obligated to maintain his faculty status. Both his university appointment and his employment contract with UACCMA were fully performed by all parties through the contract expiration date—June 30, 1997.

Applicant's contract with UACCMA was not renewed and his employment relationship with UACCMA ended." (UACCMA's brief in support of objections to petition, pp. 2-3.)

Dr. Vukmir filed a grievance with the university, which was denied. He then filed a complaint in the United States District Court for the Western District of Pennsylvania, naming as defendants the "University of Pittsburgh a/k/a University of Pittsburgh Medical Center a/k/a University of Pittsburgh Medical Center Systems; and Leonard Firestone M.D.; and James Snyder M.D." (Defendant's appendix to brief in support of objections, tab B.) The current respondent, UACCMA, was *not* named as a defendant in the federal court action. However, UACCMA alleges, and Dr. Vukmir does not dispute, that Dr. Firestone and Dr. Snyder were "officers and agents" of UACCMA. (UACCMA's brief in support of objections to petition, p. 4.) In his complaint in federal court, Dr. Vukmir alleged that the university improperly terminated his faculty position as a sanction for his exercise of free speech in criticizing patient care. Dr. Vukmir also claimed that Dr. Firestone and Dr. Snyder improperly interfered with his relationship with both the university and UACCMA, intentionally acting to cause both entities to terminate their relationships with Dr. Vukmir.

On August 29, 1997, the Honorable Donald E. Ziegler of the United States District Court for the Western District of Pennsylvania issued a memorandum order in which he granted a motion to dismiss the complaint filed on behalf of all the defendants. In that memorandum order, Judge Ziegler found the following, inter alia:

"We find that plaintiff does not state a claim for violation of his First Amendment rights because his

criticisms regarding the medical judgment of fellow doctors in four isolated instances did not constitute speech on matters of public concern." ¶8.

"As plaintiff was employed in a non-tenure stream position and the university merely failed to renew his employment contract after it expired, we find that plaintiff has failed to allege a constitutionally protected property interest that was denied by the university's failure to give plaintiff a new contract." ¶9.

"Plaintiff does not allege that the university denied plaintiff employment to which he was entitled or denied him the opportunity to pursue his career, and does not allege facts which could establish the university's conduct injured his reputation." ¶10. (citations omitted)

"Additionally, we find that plaintiff cannot state a claim for tortious interference with his contract or prospective contract relations with UACCMA. Plaintiff does not allege facts to support a finding that Drs. Firestone and Snyder acted with the intent to interfere with his relations with UACCMA or acted to induce any act of UACCMA; plaintiff had a right to a renewal contract from UACCMA; or there was a reasonable probability that plaintiff's contract with UACCMA would be renewed." ¶13.

On December 2, 1998, the United States Court of Appeals for the Third Circuit affirmed the district court's order. Dr. Vukmir then commenced this action on January 6, 1999.

## II. DISCUSSION

### A. *Is the Dispute Within the Scope of the Arbitration Provision?*

It is well-settled that "[w]hen presented with a petition to compel arbitration the court is to determine whether

an agreement to arbitrate the controversy exists. 'If a valid arbitration agreement exists between the parties and appellant's claim is within the scope of the agreement, the controversy must be submitted to arbitration.' " *Santiago v. State Farm Insurance Co.,* 453 Pa. Super. 343, 346, 683 A.2d 1216, 1217 (1996), quoting *Messa v. State Farm Insurance Co.,* 433 Pa. Super. 594, 600, 641 A.2d 1167, 1170 (1994). It is a matter of law for the court to determine whether a dispute falls within the scope of an arbitration provision. *Shadduck v. Christopher J. Kaclik Inc.,* 713 A.2d 635 (Pa. Super. 1998); *Hiller v. Allstate Insurance Co.,* 300 Pa. Super. 149, 446 A.2d 273 (1982).

The arbitration provision at issue here is contained in section 8 of the employment contract between the parties. It provides in pertinent part as follows:

"*Section 8. Arbitration* Any controversy, claim or dispute between the parties directly or indirectly concerning this contract or the breach thereof or the subject matter thereof shall be fully and finally settled by arbitration held in Pittsburgh, Pennsylvania, in accordance with the Uniform Arbitration Act, as enacted in Pennsylvania, or any similar succeeding statute then in effect, and the rules of commercial arbitration then followed by the American Arbitration Association or any successor to, the functions thereof. The costs of arbitration shall be paid equally by the parties hereto."

However, to determine whether the matter which plaintiff seeks to have arbitrated constitutes a "controversy, claim or dispute between the parties directly or indirectly concerning this contract or the breach thereof or the subject matter thereof," we must also look at the other terms of the contract. A crucial term of the contract is the section dealing with "term of employment," which was quoted above. That section

provides that Dr. Vukmir's employment with UACCMA would continue "from the effective date of this contract until the last day of the professional employee's full-time faculty appointment to the faculty of the University of Pittsburgh School of Medicine." Therefore, if the university properly terminated Dr. Vukmir's faculty appointment, there is no arbitrable issue under his employment contract with UACCMA, since the contract by its clear terms is no longer in effect.

### B. *Is a Court, in Making Its Determination of Whether or Not a Dispute Falls Within the Scope of an Arbitration Provision, Bound by Factual and Legal Determinations Previously Made by Another Court via the Doctrine of Collateral Estoppel?*

"It is well-settled that the doctrine of collateral estoppel prevents a question of law or an issue of fact that has been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Blake v. Garvin,* 403 Pa. Super. 208, 210, 588 A.2d 553, 555 (1991). It appears, however, to be an issue of first impression whether a *court* may consider previously adjudicated issues as collaterally estopped when determining whether a dispute is within the scope of an arbitration provision.

We are mindful that, under Pennsylvania's Uniform Arbitration Act, a court may not examine the merits of a controversy when acting upon a petition to compel arbitration. 42 Pa.C.S. §7304(e). However, we believe that we are *not* examining the merits when we apply the doctrine of collateral estoppel to prevent an issue which has been already litigated in federal court from being "relitigated" through arbitration. Collateral estoppel would certainly apply to prevent an issue from

being relitigated in the court of common pleas, and we believe that there is no reason to exempt arbitration from that doctrine. To do otherwise would unfairly subject UACCMA to additional litigation on an issue which has already been resolved.

We can therefore proceed with a determination of whether the issue raised at arbitration has in fact been previously adjudicated. The requirements for collateral estoppel (sometimes also referred to as "issue preclusion") have been described by the Superior Court as follows:

"Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment." *Sterling v. Fineman,* 428 Pa. Super. 233, 240 n.4, 630 A.2d 1224, 1228 n.4 (1993), quoting *Incolingo v. Maurer,* 394 Pa. Super. 352, 355, 575 A.2d 939, 940 (1990).

The first requirement in order for collateral estoppel to apply is that the issue decided in the prior case be identical to one presented here. It can be seen from an examination of Dr. Vukmir's federal court complaint that the propriety of the university's actions in terminating his faculty appointment—as discussed above, a crucial issue in determining whether the dispute at hand falls within the scope of the arbitration clause— was very much at issue in the federal court case. The entire federal court complaint is about the propriety of Dr. Vukmir's dismissal from the faculty of the uni-

versity and his subsequent termination as an employee of UACCMA.

The second component of collateral estoppel is that there be a final judgment on the merits. That component is undoubtedly met by Judge Ziegler's memorandum order, which discusses the merits of the issues raised and dismisses the federal court complaint.

The third component is that "the party against whom the plea is asserted was a party or in privity with a party in the prior case." Here, the party against whom collateral estoppel is being asserted is Dr. Vukmir, who was also a party to the federal court case. We also note that although the party asserting the doctrine of collateral estoppel—University Anesthesiology and Critical Care Medicine Associates—was not a party to the federal court action, Drs. Firestone and Snyder, who were parties to the federal court action, were officers and agents of UACCMA.

The fourth component is that "the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." Dr. Vukmir had a full and fair opportunity to litigate this issue in federal court; his response to the defendant's motion to dismiss may be found in "defendant's appendix to brief in support" at tab E.

The final component is that the determination in the prior proceeding was essential to the judgment there. As discussed above, the issue of the propriety of Dr. Vukmir's dismissal from the university's faculty was *the* critical issue in the federal court case.

## III. CONCLUSION

By applying the doctrine of collateral estoppel, we concluded that an issue which would prevent the dispute

here from failing within the scope of the arbitration clause—the propriety of the university's dismissal of Dr. Vukmir from its faculty—was already fully and finally litigated. We properly denied Dr. Vukmir's petition to compel arbitration.