**COLUMBIA MEDICAL GROUP, INC., and Frank Kresock & Rosemary DePaoli, Appellants,**

v.

**HERRING & ROLL, P.C., and William Roll, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.
Filed July 25, 2003.

**1186**

James P. Wallbillich, Pottsville, for appellants.

Walter F. Kawalec, III, Cherry Hill, for appellee.

Before: STEVENS, GRACI, and OLSZEWSKI, JJ.

STEVENS, J.

¶ 1 In this appeal, Appellants request that we review the orders entered April 16, 1999 and July 31, 2001 in the Court of Common Pleas of Columbia County. In the April 16, 1999 order, the trial court granted Appellees' preliminary objections in the nature of a demurrer, dismissed Count II of Appellants' complaint relating to breach of contract, and gave Appellants twenty days to file an amended complaint. In the July 31, 2001 order, the trial court granted summary judgment in favor of Appellees as to all remaining counts of Appellants' complaint.[1] On appeal, Appellants allege the trial court erred in dismissing Count II of their complaint since they made sufficient averments of fact to support their claim for breach of contract. In addition, Appellants contend that summary judgment was improperly entered as to all remaining claims since (1) the doctrine of collateral estoppel was inapplicable because three elements were not met, (2) contributory negligence was not a proper defense to gross negligence because it involves the element of recklessness, and (3) Appellants stated a claim for intentional infliction of emotional distress such that the claim should have been presented to a jury.[2] We affirm.

¶ 2 The relevant facts and procedural history are as follows: Columbia Medical Group, Inc. (CMG) is in the business of providing medical services to patients. Frank Kresock is a cardiologist, who is married to Rosemary DePaoli, a dermatologist. The two doctors were the sole shareholders of CMG. In 1984, Drs. Kresock and DePaoli engaged William Roll, a certified public accountant of Herring & Roll, P.C., to prepare their state and federal income tax returns. In 1988, Mr. Roll

---

1. The remaining counts include negligence, gross negligence, and intentional infliction of emotional distress.

2. We have renumbered Appellants' issues for the sake of effective appellate review.

suggested that Drs. Kresock and DePaoli incorporate their business, and CMG was created. Thereafter, between 1988 and 1994, CMG and Drs. Kresock and DePaoli engaged Mr. Roll to perform all of their accounting services, including bookkeeping, preparation of personal and corporate income tax returns, and the rendering of taxes. Mr. Roll created the bookkeeping structure, including the coding to be used for various income and expenses, and CMG provided training to its staff.

¶ 3 In 1995, the Internal Revenue Service (IRS) audited CMG, Kresock, and DePaoli. The routine IRS audit of CMG's corporate tax returns led to a criminal investigation and ultimately indictments and convictions against Drs. Kresock and DePaoli. As the United States Court of Appeals for the Third Circuit stated in affirming the judgments of sentence:

> The evidence during [the criminal] trial showed, *inter alia*, that appellants [Kresock and DePaoli] used CMG funds to purchase thousands of dollars worth of guns and jewelry, which were coded as "office supplies." Appellants [Kresock and DePaoli] also purchased numerous vehicles, including a Ferrari Testarossa and Harley Davidson motorcycle, with corporate funds. Additionally, they used CMG funds to renovate their vacation home, purchase jewelry, gold coins, and many other personal items and services....Many of Kresock's receipts were altered. Appellants [Kresock and DePaoli] did not declare the personal expenses they paid for with CMG funds as income on their personal tax returns.

> Evidence showed that appellants [Kresock and DePaoli] took steps to conceal the personal nature of the corporation's expenditures by falsely coding the check stubs to make the expenses appear business related.

*United States of America v. DePaoli and Kresock*, 41 Fed.Appx. 543 (3rd Cir.2002) (unpublished memorandum).

¶ 4 CMG, Kresock, and DePaoli (collectively Appellants) commenced the instant civil action by the filing of a praecipe for writ of summons on January 23, 1998. On June 11, 1998, Appellants filed a complaint against Herring & Roll, P.C., and Mr. Roll (collectively Appellees), alleging that Mr. Roll failed to, *inter alia*, establish a sufficient listing of accounts to which expenses for CMG could be coded and prepare accurate and appropriate personal and corporate income tax returns. Appellants further claimed that during the IRS's audit Mr. Roll advised Appellants to prepare backdated loan agreements and leases, and Mr. Roll made a series of false and misleading statements to the IRS. In their complaint, Appellants raised claims for negligence, breach of contract, gross negligence, and intentional infliction of emotional distress.

¶ 5 On July 1, 1998, Appellees filed preliminary objections in the nature of a demurrer to Appellants' complaint alleging that Appellants failed to set forth sufficient facts to permit recovery for breach of contract. On April 16, 1999, the trial court sustained Appellees' preliminary objections and dismissed Count II of Appellants' complaint relating to breach of contract. The trial court concluded that Appellants failed to set forth sufficient facts to support a claim for breach of contract and that the cause of action sounded in negligence. The trial court granted Appellants twenty days to amend their complaint.

¶ 6 On May 10, 1999, Appellants filed an amended complaint raising claims of negligence, breach of contract, gross negligence, and intentional infliction of emotional distress. On May 24, 1999, Appellees filed preliminary objections in the nature

of a demurrer requesting the court to strike Appellants' request for attorneys' fees and punitive damages. Appellees further sought a demurrer to Appellants' claim for breach of contract. By order filed July 19, 1999, the trial court sustained Appellees' preliminary objections to Appellants' claim for breach of contract and dismissed the claim with prejudice. The trial court declined to strike Appellants' requests for attorneys' fees and punitive damages on the basis that Appellees waived their claim.

¶ 7 On August 16, 1999, Appellants filed a petition seeking reconsideration of the trial court's July 19, 1999 order and permission for the trial court's order to be certified for immediate appeal under Pa. R.A.P. 341(c). By order dated August 18, 1999, the trial court denied reconsideration and refused to certify the matter for immediate appeal.

¶ 8 On February 23, 2000, Appellees filed a motion for summary judgment alleging that Appellants could not recover damages as a matter of law. Specifically, Appellees noted that Appellants alleged in their complaint that Appellees were negligent with regard to Appellees' accounting services and that Appellees' conduct was extreme and outrageous. Appellees indicated that, prior to the commencement of the civil litigation, Appellants were indicted for various felony tax related crimes, and on December 3, 1999, a federal jury convicted Appellants of nine counts of felony income tax evasion, subscribing to a false tax return, and assisting in the preparation of false income tax returns.[3] Due to Appellants' criminal convictions, Appellees argued that Appellants were collater-

ally estopped from denying facts related to the convictions and from denying contributory negligence, which was a substantial factor in bringing about Appellants' damages. As such, Appellees argued that Appellants could not recover on any theory of negligence. As for intentional infliction of emotional distress, Appellees argued that the facts set forth in the complaint and supporting documents were insufficient as a matter of law to permit recovery. Appellants filed a response to Appellees' motion for summary judgment alleging that the pleadings were not closed and the civil matter had been stayed. On March 28, 2000, the trial court denied Appellees' motion for summary judgment.

¶ 9 On April 26, 2000, Appellees filed an answer with new matter to Appellants' amended complaint, and on November 29, 2000, Appellees filed a revised motion for summary judgment. In the revised motion, Appellees contended that the pleadings were closed and the stay lifted. Appellees again alleged that Appellants were collaterally estopped from denying contributory negligence as a result of their criminal convictions, and the fact that Appellants' defense during the criminal trial, i.e. that Appellees were to blame, failed. Therefore, there was no legal basis for recovery with regard to Appellants' negligence and gross negligence claims. With regard to intentional infliction of emotional distress, Appellees argued that it could not be sustained based on the facts alleged by Appellants. Appellants filed a response to Appellees' revised summary judgment motion,[4] and by order dated July 31, 2001, the trial court granted Appellees' revised mo-

---

**3.** On July 22, 2002, the United States Court of Appeals for the Third Circuit affirmed DePaoli and Kresock's criminal judgments of sentence.

**4.** Appellees filed a supplement to their amended motion for summary judgment in

which they discussed, in detail, the theories of issue preclusion and collateral estoppel relating to Appellants' criminal convictions and the reasons they believe Appellants did not state a cause of action for intentional infliction of emotional distress.

tion for summary judgment. This timely appeal followed, the trial court ordered Appellants to file a statement pursuant to Pa.R.A.P.1925(b), Appellants filed a timely statement, and the trial court filed a Pa. R.A.P.1925(a) opinion.

¶ 10 Appellants first challenge the trial court's April 16, 1999 order, which granted Appellees' preliminary objections and dismissed Appellants' claim for breach of contract on the basis that Appellants failed to state a claim upon which relief could be granted. Appellants specifically request that we reverse the trial court's April 16, 1999 order. We conclude that no relief is due.

¶ 11 As indicated *supra*, in its April 16, 1999 order, the trial court granted Appellees' preliminary objections and dismissed Appellants' breach of contract claim. However, the trial court granted Appellants twenty days to file an amended complaint. Appellants filed their amended complaint on May 10, 1999, and Appellees filed preliminary objections on May 24, 1999. By order filed July 19, 1999, the trial court granted Appellees' preliminary objections and, at this time, dismissed Appellants' breach of contract claim with prejudice. A review of Appellants' notice of appeal, Pa.R.A.P.1925(b) statement, and appellate brief reveals that Appellants have not appealed or any way requested that this Court review the trial court's July 19, 1999 order. Rather, Appellants have challenged the trial court's April 16, 1999 order only.

■ ¶ 12 We specifically conclude that the trial court's April 16, 1999 order was rendered moot when Appellants filed their amended complaint and the trial court entered its July 19, 1999 order dismissing Appellants' breach of contract claim with prejudice. Simply put, Appellants repeatedly request that we reverse an order which has no force and effect. Since Appellants have neither appealed nor developed any argument regarding the trial court's July 19, 1999 order, we conclude that no relief is due.

¶ 13 We note that Appellants' reference to the April 16, 1999 order is more than a mere typographical error. In their appellate brief, Appellants cite the trial court's April 16, 1999 order in full as the order from which an appeal is taken and cite to the trial court's April 16, 1999 order in the argument section of their brief. Appellants failed to indicate in any manner that they were challenging the trial court's July 19, 1999 order, which dismissed the breach of contract claim with prejudice. Appellants should have sought reversal of the trial court's July 19, 1999 order instead of the April 16, 1999 order on appeal. *See National Check v. First Fidelity Bank*, 442 Pa.Super. 211, 658 A.2d 1375 (1995) (holding that it is the order sustaining preliminary objections and dismissing with prejudice a claim that is final). We remind litigants that it is not this Court's duty to frame the issues properly and that we may review only those issues which have been properly presented to this Court.

¶ 14 Appellants next challenge the trial court's grant of summary judgment in favor of Appellees as to all remaining claims.

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus,

summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

... With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on facts and circumstances before the trial court after hearing and consideration.

*Cresswell v. Pennsylvania National Mutual Casualty Insurance Co.*, 820 A.2d 172, 177 (Pa.Super.2003) (quotation and emphasis omitted).

¶ 15 Appellants contend that the trial court erred as a matter of law in entering summary judgment as to their negligence and gross negligence claims on the basis that Appellants were collaterally estopped from denying contributory negligence. The trial court determined that Appellants' criminal convictions on nine counts of income tax evasion, subscribing to a false tax return, and aiding and assisting in the preparation of a false income tax return necessarily barred Appellants from asserting that Appellees were negligent with regard to their accounting services. The trial court reasoned that Appellants' criminal convictions established beyond a reasonable doubt that Appellants were the substantial factor in bringing about the damages asserted against Appellees with regard to the preparation of the income tax returns at issue. We agree with the trial court's conclusions.

Collateral estoppel, or issue preclusion, is a doctrine which prevents relitigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question.

*Balent v. City of Wilkes–Barre*, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995) (citations omitted).

There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action.

*Phillip v. Clark*, 385 Pa.Super. 229, 560 A.2d 777, 780 (1989) (quotation omitted).

¶ 16 Collateral estoppel applies if four elements are present:

(1) An issue decided in a prior action is identical to the one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Rue v. K–Mart Corporation*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998) (citations omitted).

It is generally accepted in th[is] Commonwealth...that a criminal conviction collaterally estops the defendant from denying his acts in a subsequent civil trial. The doctrine of 'collateral estoppel' or issue preclusion prevents a question of law or an issue of fact that has been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

*Shaffer v. Smith,* 436 Pa.Super. 411, 648 A.2d 26, 28 (1994), *affirmed,* 543 Pa. 526, 673 A.2d 872 (1996) (citations omitted).

¶ 17 Appellants contend that three of the elements required for collateral estoppel have not been met. Specifically, Appellants contend that, as a matter of law, Appellees failed to establish (1) an identity of issue between Appellants' criminal convictions and negligence/gross negligence claims, (2) the judgment regarding Appellants' criminal conviction is final, and (3) Appellants had a full and fair opportunity to litigate the negligence/gross negligence claims.

¶ 18 With regard to the first element, identity of issues between Appellants' criminal case and the instant negligence claims, it is first necessary to examine the doctrine of contributory negligence.[5] Recently, in *Gorski v. Smith,* 812 A.2d 683 (Pa.Super.2002), this Court examined whether a professional in a malpractice action based on a theory of negligence may assert, as an affirmative defense under Pennsylvania law, the contributory negligence of a client. In so doing, we reviewed Pennsylvania's Comparative Negli-

gence Act, 42 Pa.C.S.A. § 7102, which provides, in relevant part, as follows:

**(a) General rule.**-In all actions brought to recover damages for **negligence resulting in death or injury to person or property**, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(emphasis added).[6]

¶ 19 We concluded that the statute is to be construed narrowly and that it "does not apply to all actions for negligence but only to those resulting in death or injury to person or property." *Gorski,* 812 A.2d at 701 (quotation and quotation marks omitted). We reasoned that the purely monetary loss the appellant in *Gorski* was seeking did not constitute death or injury to person or property, and, therefore, the comparative negligence statute was inapplicable. We then concluded that "[w]here the Comparative Negligence Act does not apply because there was no destruction or damage to property, then the doctrine of contributory negligence bars recovery if the plaintiff's negligence has contributed to his loss."[7] *Gorski,* 812 A.2d at 702 (quotation and quotation marks omitted). We specifically held that "malpractice actions are outside the scope of the comparative

**5.** Appellees did not raise the affirmative defense of comparative negligence in their summary judgment motions.

**6.** Section 7102 was amended on June 19, 2002, effective in sixty days. Since Appellees' summary judgment motion was filed and decided prior to the date of the amendments, the amendments are inapplicable. However,

we note that subsection (a), on which we are relying, remains unaltered.

**7.** Black's Law Dictionary defines the contributory negligence doctrine as follows: "The principle that completely bars a plaintiff's recovery if the damage suffered is partly the plaintiff's own fault." Black's Law Dictionary 330 (7th ed.1999).

negligence act, and hence the doctrine of contributory negligence should apply." *Id.*

¶ 20 In the case *sub judice,* Appellants are seeking monetary damages only with regard to their negligence claims, and, as such, as in *Gorski,* we conclude that contributory negligence is applicable.

> Contributory negligence is conduct on the part of a plaintiff which falls below the standard [of care] to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. Contributory fault may stem either from a plaintiff's careless exposure of himself to danger or from his failure to exercise reasonable diligence for his own protection.

*Thompson v. Goldman,* 382 Pa. 277, 114 A.2d 160, 162 (1955) (citations omitted).

¶ 21 In *Gorski,* we applied the aforementioned standard for contributory negligence and concluded, with regard to a legal malpractice case, the following:

> A client who retains an attorney to perform legal services has a justifiable expectation that the attorney will exhibit reasonable care in the performance of those services, since that is the attorney's sacred obligation to the client. The client is, therefore, under no duty to guard against the failure of the attorney to exercise the required standard of professional care in the performance of the legal services for which the attorney was retained.... Consequently, as a matter of law, a client cannot be deemed contributorily negligent for failing to anticipate or guard against his or her attorney's negligence in the performance of legal services within the scope of the attorney's representation of the client.
>
> On the other hand, the contributory negligence of a client in a legal malpractice action has been recognized as a proper defense in those instances where the client has withheld or misrepresented information that is essential to the attorney's representation of the client. Courts have also recognized the applicability of the defense in instances where the client has chosen to disregard the legal advice which the attorney provided to the client or has violated the instructions of the attorney. This is also consistent with Pennsylvania law, since a client who withholds information from his attorney, misrepresents to the attorney crucial facts regarding circumstances integral to the representation, or fails to follow the specific instructions of the attorney has failed to exercise the reasonable care necessary for his or her own protection. Such actions by the client are a clear hindrance to the attorney's ability to adequately protect or advance the client's interests during the course of the attorney's representation.

*Gorski,* 812 A.2d at 703–704 (citations omitted).

¶ 22 We specifically conclude that the holdings enunciated in *Gorski* concerning contributory negligence and legal malpractice are equally applicable to the claims of professional malpractice which have been presented in the case *sub judice.* Moreover, we conclude that the trial court did not err in finding that the issues presented in Appellants' criminal trial and the instant negligence case are identical, and, under the contributory negligence doctrine discussed in *Gorski,* Appellants are barred from seeking recovery against Appellees.

¶ 23 During the criminal trial, in its simplest terms, the prosecution accused Appellants of intentionally including personal expenses as deductions on their corporate tax returns. Appellants did not dispute that the deductions were illegal; but rather, their defense was that they did not act intentionally. Appellants specifically al-

leged that they relied in good faith on the negligent advice given to them by their CPA, Mr. Roll, in filing their income tax returns for 1992, 1993, and 1994. For instance, during their opening statements to the jury in the criminal trial, Appellants' attorneys repeatedly informed the jury that Appellants relied on Mr. Roll's advice in good faith and that they had no criminal intent. N.T. 11/2/99 (Volume 1) at 49–50, 53, 60–61, 63–65. Appellants' entire defense was that Mr. Roll "didn't pay enough attention" to Appellants' business matters and that Appellants did not intend to defraud the government, but rather, Mr. Roll "just dropped the ball." N.T. 11/2/99 (Volume 1) at 51. In its charge to the jury, the federal court explained that all of the crimes charged against Appellants had the element of intentional/voluntary/willful conduct. N.T. 12/2/99 (Volume 17) at 21–31. The federal court further explained that a good faith belief was a defense to all of the tax charges and that:

> The defendants...contend that they are not guilty of the crimes charged because they acted in good faith and reasonably relied on the advice of a certified public accountant. The defendants claim that they are not guilty of willful or deliberate wrongdoing as charged in the indictment because they acted on the basis of advice from their accountant, [Mr. Roll].

N.T. 12/2/99 (Volume 17) at 34–35. Moreover, the federal court instructed the jury to consider whether Mr. Roll participated in the crimes as an accomplice. By its verdict, the jury concluded, beyond a reasonable doubt, that Appellants acted intentionally/willfully with regard to the filing of their improper income tax returns, and that Appellants did not rely on Mr. Roll's alleged advice in good faith.

¶ 24 Based on all of the aforementioned, we conclude that the issues presented in the criminal and instant civil action are the same and that contributory negligence was a proper defense, which barred Appellants' negligence claims. The jury in Appellants' criminal trial established that Appellants withheld/misrepresented information to Mr. Roll and chose to disregard his advice. As such, we conclude that Appellants are estopped from adjudicating whether Mr. Roll was negligent with regard to the preparation of the income tax returns/discussion with the IRS at issue, and, therefore, the first element of the collateral estoppel test has been met.

¶ 25 With regard to the second challenged element, that the judgment regarding Appellants' criminal convictions is not final, we disagree.

¶ 26 In *Shaffer v. Smith*, 543 Pa. 526, 530, 673 A.2d 872, 874 (1996), the Pennsylvania Supreme Court held that "[a] judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal." (citations omitted). The Supreme Court specifically held that "the pendency of an appeal of a criminal conviction does not deprive a party of the right to invoke collateral estoppel in a civil proceeding unless or until that conviction is reversed on appeal." *Shaffer*, 543 Pa. at 530, 673 A.2d at 875.

¶ 27 Here, Appellants were convicted in the United States District Court for the Middle District of Pennsylvania and the United States Court of Appeals for the Third Circuit affirmed their convictions. We have no information as to whether Appellants have filed appeals from the Third Circuit's decision and whether such appeals are currently pending. If an appeal has not been filed, then clearly, the criminal judgments are final. In any event, assuming, *arguendo*, that appeals have been filed, we still conclude that Appellants' criminal convictions are final for purposes of collateral estoppel under *Shaffer*.

¶ 28 With regard to the third challenged element, that Appellants did not

have a full and fair opportunity to litigate during the criminal trial the issues presented in their negligence action, we find this issue to be waived.

¶ 29 In their brief, Appellants Kresock and DePaoli allege that they were defendants in the criminal trial, but their company, CMG was not. As such, they argue that CMG was not found guilty of any wrongdoing and cannot be collaterally estopped from pursuing a negligence claim against Mr. Roll. Appellants have failed to cite any authority supporting their argument, and, therefore, we find the argument to be waived.[8] See Pa.R.A.P. 2119.

■ ¶ 30 Appellants' final contentions are that the trial court erred in entering summary judgment as to their gross negligence and intentional infliction of emotional distress claims. Specifically, Appellants claim that contributory negligence is not a defense to gross negligence since such a claim involves a finding of wanton/reckless conduct, and Appellants stated a claim for intentional infliction of emotional distress such that the claim should have been presented to a jury. We find Appellants' final contentions to be waived under *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1999).[9]

¶ 31 On October 28, 1999, the Pennsylvania Supreme Court filed an opinion specifically holding that "from this date forward, in order to preserve their claims for appel-

late review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925. Any issues not raised in a 1925(b) statement will be deemed waived." *Lord,* 553 Pa. at 417, 719 A.2d at 308.

■ ¶ 32 In the case *sub judice,* the trial court ordered Appellants to file a statement pursuant to Pa.R.A.P.1925(b), and Appellants filed the requested statement. However, Appellants failed to allege in their Pa.R.A.P.1925(b) statement that contributory negligence is not a defense to gross negligence or that they stated a claim for intentional infliction of emotional distress. As such, we find the issues to be waived.[10]

¶ 33 Affirmed.

---

8. We note that Drs. Kresock and DePaoli were the sole shareholders of CMG, and, on this basis, we find their argument to be specious at best.

9. *Lord* and its progeny have been applied to civil cases. *See McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655 (Pa.Super.2000).

10. In its Pa.R.A.P.1925(b) opinion, the trial court did not address Appellants' issue that contributory negligence is not a defense to gross negligence. However, the trial court

did address Appellants' claim that they stated a claim for intentional infliction of emotional distress. The fact the trial court addressed the intentional infliction of emotional distress claim, even though it was not included in Appellants' Pa.R.A.P.1925(b) statement, does not result in preservation of the claim. *See Commonwealth v. Alsop,* 799 A.2d 129 (Pa.Super.2002) (holding that trial court's gratuitous discussion of an issue not raised in a timely Pa.R.A.P.1925(b) statement does not preserve the issue for appeal).