J-A33007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| RUICK L. ROLLAND AND HOLLY ROLLAND, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEVEN SENN, SENN LANDSCAPING, INC., BRUCE IRRGANG, UNITED CONSTRUCTION SERVICES, INC., MODERN EQUIPMENT SALES & RENTAL CO., AND MODERN GROUP, LTD. | |
| Appellees | No. 2695 EDA 2013 |

Appeal from the Order Entered August 6, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 091203110

\*\*\*\*\*

| RUICK L. ROLLAND AND HOLLY ROLLAND, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| STEVEN SENN, SENN LANDSCAPING, INC., BRUCE IRRGANG, UNITED CONSTRUCTION SERVICES, INC., MODERN EQUIPMENT SALES & RENTAL CO., AND MODERN GROUP, LTD. | |
| APPEAL OF: BRUCE IRRGANG AND UNITED CONSTRUCTION SERVICES, INC. | |
| | No. 2697 EDA 2013 |

Appeal from the Order Entered August 6, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 091203110

J-A33007-14

| | |
|---|---|
| RUICK L. ROLLAND AND HOLLY ROLLAND, H/W<br><br>v.<br><br>STEVEN SENN, SENN LANDSCAPING, INC., BRUCE IRRGANG, UNITED CONSTRUCTION SERVICES, INC., MODERN EQUIPMENT SALES & RENTAL CO., AND MODERN GROUP, LTD.<br><br>APPEAL OF:  MODERN EQUIPMENT SALES & RENTAL CO., AND MODERN GROUP, LTD. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 2699 EDA 2013 |

Appeal from the Order Entered August 6, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 091203110

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 02, 2015**

Ruick L. Rolland (Ruick) and Holly Rolland (h/w) (collectively "the Rollands" or "Plaintiffs") appeal and Modern Equipment Sales & Rental Co. and Modern Group, Ltd. (collectively "Modern Defendants") and Bruce Irrgang and United Construction Service, Inc. ("UCS" or collectively "Irrgang Defendants") cross appeal from the trial court's order granting Irrgang Defendants' post-trial motions and ordering a new trial[1] with regard to all

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(a)(6) ("[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . . [a]n order in a civil action or proceeding awarding a new trial[.]").

- 2 -

Defendants in the underlying personal injury action instituted by the Rollands. After careful review, we affirm.

In 2009, Bruce Irrgang, hired Defendants to create a replica of the Hogan Bridge[2] on one of his personal estates located in Wayne, Pennsylvania. At the time, Irrgang owned UCS. Irrgang contracted with Ruick[3] to complete the electrical work on the project. Defendant Stephen Senn of Senn Landscaping was hired to remove silt from a pond that was under the replica. To carry out the dredging, a 10,000 pound track loader was leased by UCS from the Modern Defendants. Ruick, at the request of Irrgang, ordered and signed the lease for the track loader when it was delivered to the work site. The Modern Defendants, in turn, loaned the loader to the Senn Defendants.

Upon its delivery to the work site, Stephen Senn's ten-year-old son, Stephen Senn, Jr. (Stevie), climbed into the loader, drove it to the pond on the Irrgang property, and operated the loader intermittently for a total of an hour that day. Senn told Ruick and the Modern employee who delivered the

---

[2] The Hogan Bridge is located at the famous Augusta National Golf Club, in Augusta, Georgia, the site of the Masters tournament. It is a footbridge that takes golfers to the 12th green at Augusta and is named in honor of Ben Hogan, a legendary golfer, who won the Masters in 1953.

[3] In 1999, Ruick began working primarily for Irrgang on his property projects, was paid an hourly wage, talked multiple times a day on the phone with Irrgang, and had weekly meetings with Irrgang to coordinate his work schedule. Prior to the instant job, Ruick was working exclusively for Irrgang.

loader that his son was a competent operator of the machinery. A few days later, on August 14th, while Stevie was again operating the heavy equipment, the child lost control of the track loader, striking and injuring Ruick Rolland. As a result, Ruick required an above-the-knee amputation on his left leg.[4]

In December 2009, the Rollands filed this personal injury action against the Senn Defendants, the Modern Defendants and the Irrgang Defendants alleging numerous acts and omissions of negligence (i.e., negligent entrustment), recklessness, and strict liability and seeking both compensatory and punitive damages.[5] Plaintiffs moved for partial summary judgment against Modern and Senn on their negligent entrustment claims.[6] On April, 11, 2012, Judge Gary DiVito issued an order entering partial

---

[4] The amputation was a result of an unsuccessful bypass procedure to save the leg immediately following the accident.

[5] In October 2011, Modern commenced a declaratory judgment action against USC and its insurer, Main Street America Assurance Company, after USC and Main Street declined to contribute to Modern's defense in Rolland's action against the Defendants. In 2014, our Court quashed Modern's appeal from the trial court's order denying it partial summary judgment where Modern's alternative request for relief was not addressed by the trial court. *See Modern Equip. Sales v. Main Street Am. Assurance Co.*, 106 A.3d 784 (Pa. Super. 2014) (en banc).

[6] Modern unsuccessfully moved for reconsideration of the court's summary judgment order. Although the trial court stayed the trial, pending review of Modern's petition for interlocutory appeal of the summary judgment order, our Court ultimately denied the petition and the Supreme Court denied a petition for review.

summary judgment with regard to liability, in favor of Plaintiffs and against Modern and Senn, leaving the amount of damages and relative responsibilities of the other parties as issues to be decided at trial. On May 24, 2012, the trial court modified its April 11th order to specifically state that summary judgment had not been granted with respect to Plaintiffs' claims for punitive damages.

A three-week jury trial commenced on March 12, 2013, before the Honorable John M. Younge. One of the main issues at trial involved the extent to which Ruick was in a supervisory capacity at the job site. Modern maintained that Ruick was the supervisor at the jobsite; Irrgang testified at his deposition that he specifically asked Ruick to get the boy off the jobsite and that Ruick agreed "to take care of it." Bruce E. Irrgang Deposition, 5/17/11, at 110:13-16, 113:15-20. Conversely, Ruick testified that he was an independent contractor who possessed no authority on the jobsite to remove the ten-year-old from the track loader and that he, himself, was inexperienced with track loaders. Ruick Rolland Deposition, 5/23/11, at 197:5-8 & 18-22, 202:18-19; N.T. Jury Trial, 3/21/13, at 99:14-23, 111-14; 125-28.

At trial, Irrgang chose not to testify; however, during his deposition, Irrgang testified that he had known Ruick Rolland for approximately 20 years, had been using him to complete various projects on his properties over the years, but that Ruick was never his employee. Bruce E. Irrgang Deposition, 5/17/11, at 36:14, 37:5-24, 38:1-9, 42:3-9. Irrgang testified

that in August 2009, Ruick was in charge of work being done at his Wayne property, stating that Ruick would do "96 percent of everything," and that Ruick "handle[d] everything except the masonry work in regard to the bridge [project]." *Id.* at 30:15-24, 56:6-12, 58:6-24. Irrgang stated that both he and Ruick "explicitly understood" that Ruick was "in charge" as he had "the keys to the job[,] [h]ad the keys to the house[,] had the keys to the equipment [and] was the one that ran every job." *Id.* at 58:21-24, 59:1-7. According to Irrgang, "Ruick was, quote-unquote, the man. Everybody that stepped on to any one of my properties knew that they had to report to Ruick first" and that "Ruick knew that he could make the decisions" and had unfettered discretion to "do whatever he wanted." *Id.* at 59:11-14, 59:19-20, 60:10-12. Irrgang approved, through Ruick, Senn having an experienced relative come to the site to help him remove the silt from the pond. *Id.* at 120:21-24, 121:1-7. Irrgang, however, had no idea that Stevie was operating any machinery at the site until three weeks after the accident, *id.* at 141:12-16, was surprised that Ruick did not discuss Stevie operating equipment at the site with him, *id.* at 142:16-19, and when Irrgang confronted Ruick with the issue after the accident, Ruick admitted he "messed up." *Id.* at 143:2-3. Irrgang also testified that the masons on the job site had approached Ruick prior to the accident and told him that they did not think that Stevie should be operating the heavy equipment at the site. *Id.* at 221:15-24. Finally, Irrgang testified that initially Ruick told him Senn's nephew was operating the track loader at the time of the accident

because he "didn't want to upset [Irrgang]", *id.* at 191:7, 193:13-16, but then a couple weeks later admitted that it was Stevie. *Id.* at 193:1-7.

Defendant Senn invoked his Fifth Amendment rights and refused to take the stand for fear of being exposed to criminal liability for allegedly giving false information to the police following the accident.[7] In lieu of live testimony, Plaintiffs played for the jury designated portions of Senn's videotaped deposition, which consisted of testimony that Ruick was the site supervisor who would instruct Senn where to put things and where to do things, and was in charge of loading and moving operations. *See* Steven T. Senn Deposition, 11/24/10, at 57:4-24 & 440:4-12 ("But Ruick was in charge." "If Ruick asked Stevie [Senn, Jr.] to do something then he was to do it."); *id.* at 61:1-24; *id.* at 131:20-23 (Ruick would "[o]verse[] everything" with regard to the bridge work); *id.* at 440:13-18 (it was Senn's understanding that "Mr. Rolland was in charge at the site and if he gave you direction you should follow it."); *id.* at 507 ("He told me he was – he oversees what goes on on all – Bruce [Irrgang's] houses."). Senn also stated that Ruick was never his employee during the Irrgang project. Steven T. Senn Deposition, 11/22/10, at 340:9-16.

---

[7] Senn allegedly collaborated with Ruick to tell police officers responding to the accident that his nephew, Matt, had been operating the track loader when the accident occurred so as not to implicate his young son, Stevie. Steven T. Senn Deposition, 11/22/10, at 294-95; 344:8-14.

More than one week into trial, counsel for plaintiffs requested that Defendants produce Senn's recorded statement, taken by an adjuster working for Senn's workers' compensation carrier. Notes in the related worker's compensation file also included a phone interview between Ruick and an adjuster in which Ruick claimed that Senn was his superior, that he had been hired by Senn Landscaping as a W-2 employee, and that he was supervising the construction project on the Irrgang property. Specifically, the adjustor's notes indicated that Ruick: (1) made sure there was no property damage by other workers on the job; (2) made sure the job was being completed; (3) supervised the Senn employees' work; (4) shared the supervising and physical work on the job with Senn, and (5) checked in with Irrgang on the status of the job. This statement directly contradicted Ruick's trial testimony that he was an independent contractor at the worksite who never supervised, directed, instructed or acted as though he was in charge of Senn or Senn's employees.

The trial court ordered a partial production of the workers' compensation file for *in camera* review. Portions of the file were redacted. The Rollands, Senn Defendants and Irrgang Defendants objected to its admission, claiming that the notes had not been timely produced, could not be cross-examined, and were of dubious reliability. The trial court ultimately ruled the entire file inadmissible, concluding that it was more unfairly

prejudicial than probative under Pa.R.E. 403.[8]  N.T. Jury Trial, 3/15/13, at 15.  In response, Modern moved for a mistrial, which the trial court denied, concluding that because summary judgment with regard to liability had already been entered against Modern, it would not be prejudiced by the failure to admit the file.[9]  *Id.* at 26-27.

Ultimately, the jury returned a verdict in favor of the Rollands, finding no contributory negligence[10] and apportioning liability as follows:  Senn/Senn Landscaping (47%), Irrgang Defendants (32%), and the Modern Defendants (21%).  The jury awarded $20 million in compensatory damages

_____

[8] ***See*** Pa.R.E. 403 (court may exclude relevant evidence it its probative value is outweighed by danger of one or more of following:  unfair prejudice, confusing issues, misleading jury, undue delay, wasting time, or needlessly presenting cumulative evidence).

[9] Modern also attempted to subpoena the carrier's claims representative that took the alleged statements from plaintiff; however, the court precluded her from testifying.

[10] Our Commonwealth's comparative negligence statute states:

(a)  General rule. --In all actions brought to recover damages for negligence resulting in death or injury to person or property, **the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.**

42 Pa.C.S. § 7102 (Comparative negligence) (emphasis added).

to the Rollands (which includes $2 million for loss of consortium) and $16,000 in punitive damages against Senn, individually, due to his recklessness in the underlying accident.

All Defendants and Plaintiffs filed post-trial motions. In their motions, Defendants sought a judgment n.o.v dismissing the complaint, or, alternatively, a new trial. Modern specifically took issue with the trial court's ruling on excluding the workers' compensation file from trial. Plaintiffs, post-trial, sought to set aside the order dismissing their claim for punitive damages as against the Modern and Irrgang Defendants. On August 6, 2013, the trial court denied Plaintiffs' motion, but granted the Defendants' motions, ordering a new trial on all issues. In its Pa.R.A.P. 1925(a) opinion, the trial court listed the following, specific reasons for granting a new trial: (1) the court committed prejudicial error when it denied Modern Defendant's motion for a mistrial following the production of the Senn Defendant's workers' compensation carrier's file; and (2) the verdict was against the weight of the evidence and shocked the court's conscience, where the jury found no comparative negligence/liability on the part of Ruick.[11] Trial Court Opinion, 1/31/14, at 14. The court also clarified that its post-trial rulings "were never meant to overturn or overrule the

---

[11] The court further expounds upon this reason, stating that "superseding cause was intertwined with this Court's decision to award a new trial based on the inconsistent nature of the [v]erdict that failed to assess comparative negligence on the part of Mr. Rolland." Trial Court Opinion, 1/31/14, at 26.

- 10 -

Motion Court's award of summary judgment in favor of Plaintiffs." *Id.* at 15.

Rather, the court explained that the ruling had just contributed to the problematic verdict. *Id.* at 20. The court determined that because the jury apportioned negligence among multiple defendants, the grant of a new trial should be held as to *all* defendants so that a new jury could hear all of the evidence and re-apportion fault.

Plaintiffs filed a timely notice of appeal from the August 6, 2013 order; the Modern Defendants and Irrgang Defendants filed timely notices of cross-appeal. On appeal, the Appellants, Plaintiffs/the Rollands, raise the following issues:

> (1)  Did the trial court err as a matter of law, or otherwise abuse its discretion, when it ruled that a new trial was necessary based on the trial judge's conclusion, stemming from his failure to consider the evidence in a light most favorable to the plaintiffs, that the jury's finding that plaintiff was not liable to any extent whatsoever for his own injuries "shocked the conscience" of the trial judge?
>
> (2)  Did the trial judge err as a matter of law, or otherwise abuse his discretion, in concluding that a predecessor judge's entry of summary judgment in favor of plaintiffs as to liability against the Modern and Senn defendants somehow prejudiced defendants UCS and Irrgang's right to a fair trial on the subject of their own liability, such that it was proper to order a new trial at which the jury would be required to adjudicate the liability of all defendants, where: (i) UCS and Irrgang were afforded a fair opportunity to fully litigate every aspect of their own liability, causation, damages and contributory negligence; and (ii) the Senn defendants have conceded their responsibility for Rolland's injuries?
>
> (3)  Did the trial court err as a matter of law, or otherwise abuse its discretion, when it concluded that it should have granted a mistrial at the request of the Modern defendants

- 11 -

after the trial court improperly ordered, *sua sponte*, in the midst of trial, the production of a worker[s'] compensation file that none of the parties was then seeking, when the trial court's contemporaneous decision to exclude the worker's compensation file represented a proper exercise of that court's discretion?

(4)     Whether, if this Court were to affirm the trial court's grant of a new trial, this Court should remand to the trial court for a ruling in the first instance on plaintiffs' motion for post-trial relief seeking punitive damages against the Modern defendants, UCS, and Irrgang?

On cross-appeal, the Modern Defendants raise the following issue for our consideration:

Was Modern entitled to a judgment n.o.v. on the ground that plaintiff failed to demonstrate the existence of a legally-cognizable tort duty owed to him by Modern under the circumstances?[12]

Finally, on cross-appeal, the Irrgang Defendants present us with the following claims:

(1)     Did the trial court err in not granting judgment notwithstanding the verdict to Irrgang and UCS where Plaintiffs failed to present evidence capable of establishing that these defendants were negligent, or that their

---

[12] While Modern raises three additional issues in its appellate brief (was Modern prejudiced and denied right to fair trial in presenting its defense due to mid-trial production of workers' compensation file; was jury's no contributory negligence verdict with regard to plaintiff against weight of evidence; and was Modern unfairly prejudiced and denied right to fair trial in presenting its defense due to erroneous summary judgment orders), those issues were all answered in the affirmative by the trial court and were the bases of the trial court's order granting a new trial.  Therefore, they are not "cross-appeal" issues, but rather counterstatements of Appellants' issues, or, most correctly termed "Appellees' issues."

negligence was a substantial cause of the [sic] Rolland's accident and injury?

(2)    Were Irrgang and UCS entitled to judgment because the evidence established that Rolland was reckless as a matter of law?

(3)    Were Irrgang and UCS entitled to judgment because the evidence established that Rolland's comparative negligence exceeded any possible negligence of the defendants as a matter of law?

(4)    Alternatively, did the court err in failing to find that judgment would have been granted Irrgang and UCS because the Senn defendants were 100 percent liable for Plaintiffs' harm?

In **Morrison v. Dep't of Pub. Welfare**, 646 A.2d 565, 570 (Pa. 1994), our Supreme Court set forth the proper appellate standard and scope of review for a trial court's decision to grant a new trial:

[T]he decision to order a new trial is one that lies within the discretion of the trial court. [**Coker v. S.M. Flickinger Co., Inc.**], 533 Pa. [441,] 447, 625 A.2d [1181,] 1184 [Pa. 1993]. Thus, the standard for appellate review of such a decision is always an abuse of discretion standard. In contrast, the scope of the appellate court's review of the trial court's decision varies:  It is determined by whether the trial court cites a finite set of reasons for its decision, indicating that but for the cited reasons it would not have granted a new trial, or "leaves open the possibility that it would have ordered a new trial for reasons other than those it specified. **Id.** at 446, 625 A.2d at 1184. If the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial "in the interests of justice," the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial. **Id.** at 448, 625 A.2d at 1185. **However, if, as in this case, the trial court "indicates that the reasons it gives are the only basis for which it ordered a new trial[,] . . . an appellate court can only examine the stated reasons.  Id.** at 449, 625 A.2d at 1185.

*Id.* at 570 (emphasis added). Moreover, our Court is to focus on whether the trial court's stated reasons and factual basis are supported in the record. *Coker*, 625 A.2d at 1187. "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id.* In considering whether the record supports the trial court's decision, "the appellate court is to defer to the judgment of the trial court, for the trial court is uniquely qualified to determine factual matters." *Morrison*, 646 A.2d at 571. An abuse of discretion does not occur when the trial court reaches a different decision than the appellate court would have reached. *Id.*

Instantly, Judge Younge explicitly listed the two reasons why he granted a new trial in the underlying action. Accordingly, we are constrained to confine our review on appeal to those stated reasons. *Morrison*, *supra*.

We note that a new trial is not warranted merely because an irregularity occurred at trial or because another judge may have ruled differently. *Bey v. Sacks*, 789 A.2d 232, 236 (Pa. Super. 2001). Rather, the moving party must prove they suffered some prejudice as a result of the error. *Id.*

Here, the trial court determined that it erred in failing to grant a mistrial following plaintiff's production of the workers' compensation file. This error amounted to a mistake of a discretionary matter. At the time the trial court was faced with making the decision regarding whether the file would be admissible at trial, the court was not aware that Senn had actually

submitted a claim to his carrier on Ruick's behalf and that Ruick, Senn and Irrgang had actually given a statement supporting that claim to Senn's insurer. These unknown facts[13] raised the possibility that all the Defendants, excluding Modern, had collaborated to defraud the insurance company.[14] The fact that the workers' compensation file was not admitted at trial effectively precluded Modern from cross-examining Ruick on whether he, in fact, was in a supervisory position at the work site when the accident occurred, which would have contradicted Ruick's own deposition and trial testimony, as well as the testimony of his witnesses at trial. *See* Ruick Rolland Deposition, 5/23/11 at 48:4-7; N.T. Jury Trial, 3/13/13, at 40, 48, 52.; N.T. Jury Trial, 3/21/13, at 125-28. If the file had been admitted,

---

[13] Counsel for Modern best expressed the impact that the failure to admit the contents of the file had on the trial:

> The evidence that came up during trial involving the workers' compensation file, Judge, is not in and of itself necessarily an issue that didn't come into the trial as much as **that information is a substantial change in the facts and circumstances of this case** where Mr. Rolland had made statements to another party that directly contradicted his testimony both at deposition and here on the stand.

N.T. Post-Trial Motions, 8/5/13, at 8-9 (emphasis added).

[14] Ruick testified that while he was in the hospital, following the accident, Senn asked him to say that Ruick was his employee so he could collect worker's compensation benefits. *See* Deposition of Ruick Rolland, 5/23/11, at 137:10-13. The insurance claim, however, was denied by Senn's workers' compensation carrier after it determined that Ruick was not employed by Senn.

statements made to the insurance carrier could have bolstered Modern's defense, which largely consisted of Ruick's status as site supervisor who failed to exercise his authority and intervene when he witnessed a 10-year-old operating heavy machinery. The file's admission could also have materially affected the pre-trial ruling on Ruick's summary judgment motion, as well as the ultimate outcome of trial by exposing Ruick's participation in an attempted fraud, and most importantly, called into question the credibility of the other defendants who maintained that Ruick was a supervisor on the job site. Most critical, however, is the fact that if the jury were to have believed that Ruick was a supervisor at the site, it would have had a direct bearing on whether Ruick was contributorily negligent in the accident.

**Admission of Workers' Compensation File**

Our review of a trial court's decision to admit or exclude evidence is well-settled:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of the law. In addition, in order for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409, 417 (Pa. Super. 2007)

Here, Defendants failed to produce statements made by Ruick and Senn to Senn's insurance carrier regarding the accident. The content of

those alleged statements concerned the extent to which Ruick was involved in supervising the worksite. During trial, the judge concluded that admission of the file would be more prejudicial than probative and excluded the evidence. However, upon further consideration, the court discovered that the file contained additional statements that could have been a source of impeachment evidence against Ruick and helped bolster Modern's defense at trial. Post-trial, the trial judge concluded that the contents of the file, specifically the notes regarding Ruick's statements, should have been admitted, as they were directly relevant to the issue of Ruick's potential contributory negligence in the underlying accident. *See* Pa.R.E. 401 (evidence is relevant if it tends to make fact more or less probable than it would be without evidence and fact is of consequence in determining action); *see also* Pa.R.E. 402 (all relevant evidence is admissible).

Pursuant to Pa.R.E. 803(25), an opposing party's statement is an exception to the hearsay rule when it is offered against an opposing party and was made by the party in an individual or representative capacity. Pa.R.E. 803(25)(A). Here, the court neither abused its discretion nor committed an error of law in finding that it erred by failing to admit the workers' compensation file where its contents were admissible under Pa.R.E. 803(25) and relevant to the issue of Ruick's contributory negligence. Accordingly, we now review its decision to grant a new trial by applying an abuse of discretion standard and focusing on whether the trial court's stated reasons and factual basis are supported in the record. *Morrison*, 646 A.2d

- 17 -

at 571. We accomplish this by deferring to the judgment of the trial court, as the trial court is uniquely qualified to determine factual matters. *Id.*

In **Morrison**, **supra**, a trial court granted a new trial based on its decision to deny defendant's motion *in limine* to preclude plaintiff from introducing evidence that the defendant's ambulance crew failed to stay at the scene of the victim's accident. Because no evidence had been presented to show that the victim could have survived the accident, and, in fact, that the evidence supported a finding to the contrary, the court found that "it had committed very serious trial court error in permitting the evidence and argument regarding the [defendant ambulance crew's] conduct following the accident." *Id.* at 658.

Here, we find that the content of the workers' compensation file, which called into question Ruick's supervisory capacity at the worksite, was relevant to the issue of his contributory negligence. The issue of Ruick's status at the accident site bore directly on the issue of his potential liability in openly permitting a ten-year-old child to operate the track loader and any inconsistent testimony he may have given went directly to its weight and Ruick's credibility. Because Modern was unable to cross-examine Ruick with his contradictory statement regarding his involvement in the operations of the work site, the court properly determined that a new trial was warranted as a result of its failure to admit the evidence which had a direct bearing on Modern's defense. *Id.* Thus, the trial court's determination that the failure to admit the evidence prejudiced Modern, and thus necessitated the grant of

a new trial, is supported in the record. ***Morrison***, ***supra***. Therefore, the trial court did not abuse its discretion.[15]

**Was verdict against the weight of the evidence requiring a new trial?**

Here, the trial court granted a new trial "because the [v]erdict assessing no comparative negligence against Mr. Rolland was against the sheer weight of the evidence to such an extent that it shocked the conscience of th[e] Court." Trial Court Opinion, 1/31/14, at 14.

A new trial is granted on the basis that the verdict is against the weight of the evidence when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and a new trial is necessary to rectify this situation. ***Folger v. Dugan***, 876 A.2d 1049, 1053 (Pa. Super. 2005) (citation omitted). However, a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the fact-finder could have decided in favor of either party. ***Lanning v. West***, 803 A.2d 753, 765-66 (Pa. Super. 2002).

---

[15] The trial court's original premise, that because Modern had conceded liability prior to trial the failure to admit the workers' compensation file had not impacted [Modern's negligence] one bit" is incorrect. This is highlighted by the fact that Modern's counsel was not even made aware of the existence of the worker's compensation file, and any accompanying party statements, until the afternoon of March 14, 2013 – already two days into trial. Had this file been available prior to Plaintiffs' partial summary judgment motion, it most likely would not have conceded liability. Accordingly, the issue of all parties' negligence would have been before the jury, including any evidence to discredit Ruick's trial testimony that he did not act in a supervisory capacity at the jobsite.

Instantly, the trial court found that a new trial was warranted based on the fact that the jury found no comparative negligence on the part of Ruick. In *Columbia Med. Group Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184 (Pa. Super. 2003), our Court defined contributory negligence as:

> [C]onduct on the part of a plaintiff which falls below the standard of care to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. Contributory fault may stem either from a plaintiff's careless exposure of himself to danger or from his failure to exercise reasonable diligence for his own protection.

*Id.* at 1192 (quotation omitted).

Here, the trial court determined that the jury's verdict of 0% negligence on the part of Ruick was "extremely suspect given the posture of this case as presented to the [j]ury." Trial Court Opinion, 1/31/14, at 23. Essentially the court below concluded that the evidence showed that Ruick was to some degree at fault. In essence, the verdict did not bear a relationship to the evidence had the jury been given the opportunity to consider the workers' compensation file.

The court noted that, at trial, Ruick testified that he was an independent contractor, heavily involved in construction at the subject work site, who signed for the delivery of the track loader. By contrast, in his statement to Senn's insurance carrier, Ruick represented that he was not only the supervisor on the job, but also operated the track loader at the site. In fact, both Irrgang's and Senn's deposition testimony corroborates the statement that Ruick was responsible for supervising all of the workers at

the jobsite, and that he was "running everything that was going on on the property." *See* Deposition Steven T. Senn, 11/22/10, at 272-73; *see also* Deposition of Bruce E. Irrgang, 5/17/11, at 59:11-14, 59:19-20, 85:1 ("Ruick supervised everybody."). Irrgang testified at his deposition that Ruick admitted he messed up and that it was Ruick's responsibility to make sure all operations at the site were being carried out safely. *Id.* at 182:9-20; 183:1-2. Moreover, Senn testified in his deposition that, at the moment immediately preceding the accident, Ruick had stopped Stevie on the roadway and told him where to redirect the track loader to avoid going over a hose, Deposition of Steven Senn, 11/22/10, at 270-72, and that at that point Ruick was supervising Stevie and was in charge of Stevie's actions on the jobsite.[16] Finally, Senn testified at his deposition that when he ran to the accident site, finding Ruick severely injured, Ruick told Senn that he had been "in the wrong place at the wrong time" and that Ruick "had [his] foot in the wrong place." *Id.* at 284, 308 ("[Rolland said] he had his foot in front of the track, where it shouldn't have been.").

Jerry L. Purswell, Ph.D., a doctor of engineering and an expert in teaching safety in the field of engineering and ergonomics,[17] testified as a

---

[16] In fact, Senn testified at his deposition that Ruick was supervising everyone on the jobsite. *Id.* at 272.

[17] Ergonomics is the study of people's efficiency in their working environment. Ergonomists have attempted to define postures which minimize unnecessary static work and reduce the forces acting on the body.

witness for Modern, stating that it was unreasonable for Ruick to be closer than 10 feet from a running track loader while he tried to flip a hose over the top of the machine as it moved forward towards him. N.T. Jury Trial, 3/22/13, at 62-63. Doctor Purswell also opined that even if the track loader were slowly proceeding towards Ruick (to the left) at the time of the accident, it would have been impossible for Ruick's leg to have been sucked under the loader unless Ruick's foot was actually in front of the tread. *Id.* at 70-74.

Based upon this evidence we agree with the trial court that the jury's zero contributory negligence verdict was inconsistent with the fact that Ruick was personally responsible for his own voluntary actions and decision to closely approach the running track loader and give operating directions to a ten-year-old.

"[O]ne of the least assailable grounds upon which a new trial is granted is the trial court's conclusion that the verdict is against the weight of the evidence and, under such circumstances, an appellate court usually is reluctant to interfere." *Heffernan v. Rosser*, 215 A.2d 655, 657 (Pa. 1966). Moreover, upon an appeal from the grant of a new trial, an appellate court recognizes the burden which the appellant has to establish that the action of the court below constituted a clear and palpable abuse of discretion or an error of law which controls the case. *Id*.

Here, where the issue of contributory negligence bore upon the ultimate apportioning of liability among the parties, the court properly granted a new trial on the basis of the weight of the evidence.

## J.N.O.V. Ruling for Modern and Irrgang Defendants

Both Modern and Irrgang Defendants assert on appeal that even though the trial court properly granted a new trial, they are entitled to a judgment notwithstanding the verdict (JNOV). Modern specifically claims that it did not owe a legal duty to Ruick and, therefore, cannot be liable for negligence as a matter of law. Irrgang Defendants argue that Ruick failed to present evidence that it was negligent or that its negligence was a substantial cause of Ruick's accident and injuries.

> There are two bases upon which a court may enter a judgment n.o.v.: (1) the movant is entitled to judgment as a matter of law, **Moure v. Raeuchle**, [] 604 A.2d 1003, 1007 (Pa. 1992) (quoting **Tremaine v. H.K. Mulford Co.**, [] 176 A. 212 (Pa. 1935)), or (2), the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, id. (quoting **Cummings v. Nazareth Borough**, [] 233 A.2d 874 (Pa. 1967)). With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in their favor; whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. **Id.**

**Quinby v. Plumsteadville Family Practice**, 907 A.2d 1061, 1074 (Pa. 2006).

Modern asserts that once it delivered the track loader to the work site and entrusted it to Ruick and UCS, via a lease agreement, it no longer owed

a legal duty to Ruick or had any obligation to control the conduct of third persons who might operate the machine.

Instantly, Plaintiffs sued Modern under the theory of negligent entrustment which states that "[i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts, § 308 (Permitting Improper Persons to Use Things or Engage in Activities). At trial, Plaintiffs and Defendant Senn put forth evidence that the Modern employee who delivered the track loader to the work site saw Stevie operate the machine on two occasions. The employee expressed his astonishment to workers at the site with regard to seeing such a young child operate the track loader and, as a result, subsequently reported the incident to a Modern rental manager. With Modern on notice that its machine was being operated by a minor, Plaintiff posited that it was Modern's obligation to confront Irrgang or Ruick, who signed for the machine, to advise them that the equipment was only to be used by "competent operators" as per the lease agreement. Plaintiffs also argued that Modern could have exercised its right to repossess the equipment if it believed it was being used by incompetent operators. Because Modern failed to take either action, the court properly chose to deny Modern's motion for JNOV where there was a

legitimate issue of the company's negligent entrustment of the track loader to the other Defendants and Plaintiff.

Irrgang Defendants claim that j.n.o.v should have been granted in its favor because Ruick failed to establish that Irrgang Defendants owed Ruick a duty or exercised any control over the means and methods of the work performed by the independent contractors involved in the pond-dredging and bridge project on Irrgang's property. We disagree.

At trial, Ruick testified that Bruce Irrgang not only owned the property, but hired and paid the salaries of each laborer on the job, and most importantly, that those workers reported directly to Irrgang with regard to the work that they were to perform on the property. Moreover, Irrgang, through his company, UCS, ordered and rented the track loader from Modern for Senn's use at his worksite. Ruick testified that Irrgang "micromanaged" all of the activities at the site and had ultimate authority over the workers. Accordingly, the court correctly denied Irrgang Defendants' motion for a JNOV where it was not entitled to judgment as a matter of law on the issue of Irrgang's duty and where two reasonable minds could disagree that a decision should have been rendered in favor of the movant. *Quinby*, *supra*.

## Conclusion

Because the trial court's stated reasons to grant a new trial are supported in the record, and because the trial court was in the best position to assess the effect on the jury of the evidence and argument, we conclude

that the trial court did not abuse its discretion.[18] ***Armbruster v. Horowitz***, 813 A.2d 698 (Pa. 2002) (new trial should be granted only in truly extraordinary circumstances, i.e., when jury's verdict is so contrary to evidence as to shock one's sense of justice and award of new trial is imperative so that right may be given another opportunity to prevail).[19]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2015

---

[18] Because we affirm the trial court's order granting a new trial, we need not address cross-appellants' issues that relate to rulings in the now-nullified trial. ***Chiaverini v. Sewickley Valley Hosp.***, 598 A.2d 1021, 1024 n.3 (Pa. Super. 1991).

[19] Having determined that a new trial was properly granted, we need not revisit the issue of punitive damages which will, presumably, be presented at the conclusion of the new trial.